Gordon **NOVEL**, Plaintiff,

v.

**Jim GARRISON** and **HMH** Publishing Co., Inc., a Delaware corporation, Defendants.

No. 67 C 1895.

United State District Court, N. D. Illinois, E. D.

Nov. 24, 1971.

See also D.C., 294 F.Supp. 825.

**978**

---

· Elmer Gertz, Chicago, Ill., for plaintiff Gordon Novel.

David J. Krupp, Devoe Shadur, Mikva & Plotkin, Chicago, Ill., for defendant HMH Publishing Co.

Sheldon Karon and Stephen C. Shamberg, Friedman, Koven, Salzman, Koenigsberg, Specks & Homer, Chicago, Ill., Deutsch, Kerrigan & Stiles, New Orleans, La., for defendant Jim Garrison.

## MEMORANDUM, ORDER AND JUDGMENT

CAMPBELL, Senior District Judge.

This is an action for libel brought by plaintiff, Gordon Novel, against defendants, Jim Garrison and HMH Publishing Company. At all times relevant to this case, Garrison was the District Attorney for the Parish of Orleans, Louisiana. HMH Publishing Co. is publisher of a widely circulated magazine known as "Playboy". The alleged libel occurred in an article which appeared in Playboy Magazine and which was the result of an interview with Garrison relating to his widely publicized investigation into the assassination of President John F. Kennedy.

After all discovery was completed and an extensive pretrial order filed, both defendants presented motions for summary judgment. Those motions for summary judgment were denied, although I noted that the denial was,

"without prejudice to the rights of both defendants to present the same arguments in support of an appropriate motion at the conclusion of plaintiff's case or at the close of the evidence." When the case was set for trial, I agreed to reconsider the motions of both defendants for summary judgment. At that time I stressed that I wanted the parties and particularly plaintiff to point out in the record, i. e. the depositions, answers to interrogatories and the stipulation of facts contained in the pretrial order, the evidence relied on to establish the existence or absence of malice on the part of both defendants. I also inquired of counsel as to whether everything was presently in the record that would be in the record at the end of plaintiff's case. In response to that inquiry, counsel for plaintiff stated:

"In response to your Honor's question as to whether all of the evidence is in the record at this point regarding the issue of malice, I would say that as to the defendant, HMH Publishing Company, I think that, yes, all of the evidence regarding malice or lack thereof is in fact now present in the record."

Plaintiff's counsel also agreed that the record was complete on the issue of whether the defendant Garrison was entitled to quasi-judicial immunity. Plaintiff's counsel, however, did not think that the record was complete as to the issue of the existence of malice on the part of the defendant Garrison, because "particularly his motive and subjective feelings there's something that would have to be brought out."

In light of the above statements of counsel generally conceding the completeness of the record and upon my own consideration of the legal arguments excellently presented by the parties, I am convinced that the motions of both defendants should be granted and judgment should be entered on their behalf.

In granting defendants' motions, I am of course fully aware that summary judgment may not be granted if there is any genuine issue of material fact still to be resolved. In determining whether there is any genuine issue of material fact, the court is authorized to examine the proffered materials beyond the pleadings, particularly depositions, answers to interrogatories and stipulations of uncontested facts, as are presently before the court. In Kirk v. Home Indemnity Company, 431 F.2d 554 (1970), our Court of Appeals for the 7th Circuit observed that the function of the summary judgment procedure is essentially the same as the theory underlying the motion for directed verdict. The decision in *Kirk* then quoted Professor Moore's authoritative work in Federal Practice:

"The crux of both theories is that there is no genuine issue of material fact to be determined by the trier of the facts, and that on the law applicable to the established facts the movant is entitled to judgment. As Justice Jackson stated in Sartor v. Arkansas Natural Gas Co. [321 U.S. 620, 64 S. Ct. 724, 88 L.Ed. 967] 'a summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party.' " 431 F.2d at 559, citing 6 Moore's Federal Practice 2d Ed. Paragraph 56.02(10) at 2043.

The opinion in *Kirk* also states appropriately that, "when a motion for summary judgment is made and properly supported, an adverse party may not rest upon the mere allegations of his pleading but his response by affidavits or otherwise must set forth specific facts as showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, should be entered against him." 431 F.2d at 560. In a similar vein, our Court of Appeals in Ashwell & Company v. Transamerica Insurance Company, 407 F.2d 762 (1969) observed:

"Rule 56 does not provide any method for exactly determining the presence of an issue of fact, and so each case depends upon the facts peculiar to it. Speaking in general terms, the court

is not authorized under the rule to try issues of fact but it has the power to penetrate the allegations of fact in the pleadings and look to any evidential source to determine whether there is an issue of fact to be tried." 407 F. 2d at 766.

Summary judgment procedures have been particularly utilized in libel cases. As explained by the Court of Appeals for the 5th Circuit in Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858, 867 (1970):

"Freedom of expression must have a necessary breathing space if it is to survive. If these statements raise factual issues of actual malice, that necessary breathing space becomes almost meaningless. As has been noted, actual malice is a constitutional issue to be determined initially by the trial judge on motion for summary judgment."

The defendants in this case have cited numerous relevant decisions where summary judgments have been granted in favor of defendants where the pleadings and other available evidence establishes that a plaintiff's proof on the malice issue will surely fail. See Washington Post Company v. Keogh, 125 U.S.App. D.C. 32, 365 F.2d 965 (1966); Wasserman v. Time, Inc., 138 U.S.App.D.C. 7, 424 F.2d 920 (1970); Thompson v. Evening Star Newspaper Company, 129 U. S.App.D.C. 299, 394 F.2d 774 (1968); Time, Inc. v. McLaney, 406 F.2d 565 (5th Cir. 1969); Walker v. Pulitzer Publishing Company, 394 F.2d 800 (8th Cir. 1968); Hurley v. Northwest Publications, Inc., 398 F.2d 346 (8th Cir. 1968); Konigsberg v. Time, Inc., 312 F.Supp. 848 (S.D.N.Y.1970); Sellers v. Time, Inc., 299 F.Supp. 582 (E.D. Pa.1969) aff'd 423 F.2d 887 (3rd Cir. 1970); Cerrito v. Time, Inc., 302 F. Supp. 1071 (N.D.Cal.1969); Bennett v. Transamerican Press, 298 F.Supp. 1013 (S.D.Ia.1969); Jackson v. Atlantic Monthly Company, 324 F.Supp. 1302 (N.D.Ga.1971); and Spern v. Time, Inc., 324 F.Supp. 1201 (N.D.Pa.1971).

In the last cited *Spern* case, the court stated (at 1204):

"The plaintiff must bear the burden of coming forth with affirmative evidence of facts indicating the defendant's probable knowledge of the falsity."

In this case, as I shall illustrate in detail, plaintiff Novel has done absolutely nothing toward bearing his burden of coming forth with affirmative evidence.

The following facts are stipulated in the pretrial order submitted by the parties. Plaintiff is a citizen of the State of Ohio. Defendant Garrison is a citizen of the State of Louisiana. In his official capacity, Garrison was carrying on an investigation of an alleged New Orleans based conspiracy which culminated in the assassination of President John F. Kennedy. Defendant HMH Publishing Co. is a Delaware Corporation having its principal place of business in Chicago, Illinois. Playboy Magazine is printed and published by HMH in the State of Illinois and is distributed from this State.

Some time prior to June 24, 1967, Garrison agreed to grant an interview to Eric Norden, a free lance writer, for publication in Playboy Magazine. The request was initiated by Playboy. Garrison was not paid for the interview nor did he pay anyone for its publication. The entire article was approved by Garrison prior to its publication in the October 1967 issue of Playboy Magazine. The verification of the facts contained in the interview consisted of submitting the galley proofs to defendant Garrison and to Eric Norden for checking; the galley proofs were also sent to Playboy's research department, whose normal practice for verification is by checking other accounts of the subject matter previously published in the news media and in reference works. Playboy made no effort to contact any of the persons mentioned in the interview other than Garrison himself to verify any of the statements concerning them.

Some time in February, 1967 Mr. Novel, knowing that one David Ferrie figured prominently in defendant Garrison's investigation of the assassination of President Kennedy, voluntarily disclosed to Mr. Garrison that he (Novel), David Ferrie and one Sergio Arcacha-Smith, the head of an anti-Castro Cuban refugee organization, had been associated in 1961 in the removal of military munitions from a bunker in Houma, Louisiana. Mr. Novel told Mr. Garrison that he had been asked to participate in the removal of munitions by Arcacha-Smith who had requested him to wear dark clothes and come armed; that entrance to the bunker was accomplished with the aid of bolt cutters; that the removal was carried out under cover of darkness; and that plaintiff and his companions had posted a look-out with a walkie-talkie radio set in order to avoid being apprehended.

Mr. Novel received a subpoena requiring him to appear on March 16, 1967 and testify before the Orleans Parish grand jury in connection with its investigation of the assassination of President Kennedy. On that date Mr. Novel appeared in response to the subpoena but was told to come back a week later.

Prior to that date Mr. Novel drafted a letter to Mr. Weiss, whom he believed to be Chief Security Officer of the United States State Department informing Mr. Weiss that Garrison issued the subpoena and intended to inquire about matters which, "may be classified top secret activities of individuals connected with Double-Check Corp. Miami in first quarter of 1961." The letter further advised Mr. Weiss that he (Novel) had, "no current contact available to inform of this situation so I took the liberty of writing you direct and appraising you of current situation. Expecting you to forward this through appropriate channels." Mr. Novel said he believed that Double-Check Corp. had been a front entity of the United States Central Intelligence Agency.

After drafting the letter Mr. Novel left New Orleans. The letter was found in his former apartment. On March 23, 1967 the Criminal District Court for Orleans Parish, Louisiana ordered the arrest of Mr. Novel as a material witness in connection with the investigation into the assassination of President Kennedy. On April 1, 1967, Mr. Novel was arrested in Gahanna, Ohio and held in custody in Columbus, Ohio as a fugitive witness prior to being released on bond. On March 19, 1968 the Ohio Court of Appeals overruled a lower court order requiring Mr. Novel to return and testify before the Orleans Parish Grand Jury. On April 13, 1967, Garrison filed a Bill of Information in the Criminal Court of Orleans Parish Louisiana charging Mr. Novel with conspiracy to commit burglary in connection with the 1961 removal of munitions in which Mr. Novel still insists he participated. On August 9, 1967 the District Attorney of Terrebonne, Louisiana also filed a Bill of Information against Mr. Novel accusing him of burglary of the munitions bunker. The Governor of Ohio refused to extradite Mr. Novel on the conspiracy to burglarize and burglary charges. The charges against him in both Orleans and Terrebonne Parishes relating to burglary of the bunker are still pending.

Mr. Novel's involvement in the assassination investigation was described in many articles and stories in numerous publications throughout the country. Novel and his attorneys appeared on television news programs in Columbus, Ohio and New Orleans, Louisiana answering questions or making statements concerning Novel's relationship with Garrison and the assassination.

On or about June 14, 1967, Novel sent a telegram to Garrison in which he stated that if granted immunity from prosecution, he would return to New Orleans to testify on various matters, including:

"No. 1.   International Fraud;

No. 2.   Public and Official Bribery;

No. 3.   Intimidation;

**982**

No. 4. In my opinion the probable murder of David Ferrie;[1]

No. 5. Seditious Treason;

No. 6. Mysterious Intelligence Activities from November 1959 to date in the Southern Quadrant of the U.S.A. and certain islands off Florida;

No. 7. Hot War Games and Cold Munitions Transfers;

No. 8. Ten 1950 model Canadian Surplus Vampire Jets Support Fighter Aircraft;

No. 9. Certain Cuban-Anglo-French Sabotage Affairs of early 1961."

In his complaint, plaintiff alleges that Garrison made certain statements intended to be understood as saying that plaintiff was a part of a conspiracy to kill the President of the United States and that plaintiff had committed the crime of burglary. He further alleges that in making such statements Garrison acted maliciously and wrongfully with a specific intent to discredit plaintiff and to destroy his reputation. The complaint also alleges that the charges contained in the interview were completely false and were known by HMH Publishing Company to be completely false, or were published by HMH with a reckless disregard as to whether they were true or not.

Count Two of the complaint alleges that HMH Publishing Company also printed a forward to the interview with Garrison explaining the context and background of the interview, which was likewise libelous.

■■ In our previous consideration of these motions for summary judgment, one of the principal issues was whether plaintiff was a "public figure" requiring the application of the standards expressed in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.

Ed.2d 686 (1964). That standard requires that before a plaintiff may prevail in a libel action he must show by clear and convincing proof that the alleged libel was published with actual malice, that is, with knowledge that it was false or with reckless disregard as to its truth or falsity. 376 U.S. at 279–280, 84 S.Ct. 710. The Supreme Court has since extended the *Sullivan* standard to all publications where an individual is involved in an event of public or general interest. Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L. Ed.2d 296 (1971). There can be no question but that plaintiff, Gordon Novel, was an individual involved in an event of public or general interest.

In anticipation of the Supreme Court's decision in *Rosenbloom* (the case was argued but not decided when this motion was reargued) I made the inquiry above referred to as to whether all of the evidence regarding the issue of malice was presently in the record. Three different times during argument on these motions I directed plaintiff's counsel, in briefs to be submitted, to point out by specific reference, all evidence in the record on which Novel would rely to establish malice. The two briefs filed by plaintiff in response to the two motions for summary judgment contain no reference to any such evidence.

Upon my own review of the record, including the stipulation of facts of which much has been recited above, the depositions and the answers to interrogatories propounded by all parties, I find no evidence by which this plaintiff can sustain his heavy burden of proving actual malice against either of these defendants.

■ As to the defendant HMH, it is clear that the Playboy article described not what in its opinion Novel did but rather what someone else (Garrison) said he did. In view of the sensationalism surrounding the Garrison investigation I can phantom no way in which this

1. David Ferrie was also a subject of the Garrison investigation.

defendant can be held accountable for "actual malice" in accurately printing the actual statements of an important elected official engaged in this controversy of international significance. See Time, Inc. v. Pape, 401 U.S. 279, 91 S. Ct. 633, 28 L.Ed.2d 45 (1971).

■ Of equal significance is the fact that most of the statements alleged to be libelous originated with the plaintiff. Certain of them have even been stipulated to be true. For example in his complaint Novel alleges that he was libeled by Garrison's reference to him as a burglar, referring to the so called raid on the munitions bunker in Houma, Louisiana. Yet in the stipulation of uncontested facts it is agreed that Novel voluntarily disclosed to Garrison that he along with others participated in the removal of military munitions from a bunker in Houma, Louisiana. He also offered the fact that he had entered the bunker with the aid of bolt cutters. He was formally charged in the Criminal Court of Orleans Parish, Louisiana with conspiracy to commit simple burglary in connection with the removal of munitions and also in Terrebonne Parish, Louisiana with committing simple burglary of the munitions bunker. While charges of burglary fall short of conviction, failure to make such a distinction does not constitute malice. See Time, Inc. v. Pape, supra.

As to his involvement in the assassination investigation, Novel voluntarily disclosed his association with David Ferrie whom he knew figured prominently in that investigation. When he received a subpoena requiring him to appear and testify before the Orleans Parish grand jury in connection with the investigation of the assassination, he left New Orleans. It is stipulated that the Criminal District Court for Orleans Parish ordered the arrest of Novel as a material witness in connection with the assassination investigation. Prior to that departure he left behind a letter describ-

ing the so called connection with the CIA. He later sent a telegram to Garrison in which he stated that if granted immunity he could testify on various matters including foreign international fraud, (2) the probable murder of David Ferrie, (3) seditious treason, (4) mysterious intelligence activities, (5) hot war games and cold munitions transfers; and (6) Cuban-Anglo-French sabotage affairs.

The Playboy article does not describe plaintiff as a conspirator in the assassination plot. In fact, when his name is first mentioned, he is identified by an editor's insert as one of "Garrison's key witnesses".

In short, the plaintiff has set forth no evidence, and the court's own examination of the record reveals none, which establishes any malice on the part of Playboy in publishing this story of international interest as told to them by a prominent public official.

■ The charges against defendant, Garrison, are likewise without support in the record. In his Brief in Opposition to Garrison's Motion for Summary Judgment, plaintiff states that he contests many of the statements made by Garrison. But, as stated above, such general denials without specific averments of fact do not in themselves establish genuine issues for trial. The plaintiff has directed the Court's attention to no evidence which establishes that defendant Garrison had knowledge of any falsity of the alleged libelous statements contained in the Playboy article or that he uttered any of those statements in complete disregard as to their truth or falsity. Again, from a reading of the article itself, along with the stipulation of facts and the other evidence, particularly the deposition of the plaintiff, it appears that the substance of the statements now claimed to be libelous originated with plaintiff himself. Plaintiff argues that defendant, Garrison, has libeled him by calling him a burglar. Yet, as stated above, it

is stipulated that Mr. Novel voluntarily disclosed to Mr. Garrison that he engaged in an escapade containing all of the elements of burglary. Subsequent charges of burglary and conspiracy to commit burglary by the District Attorneys for Terrebonne Parish and Orleans Parish are admitted. In his deposition he admitted that he himself may have made the statement that the Houma bunker incident was, "the most patriotic burglary in history".

As to his alleged libelous role as a material witness in the Kennedy assassination, again it was Novel himself who, knowing that David Ferrie figured prominently in Garrison's investigation of the assassination, voluntarily disclosed to Garrison that he had associated with Ferrie and others in the munitions raid. He was also subpoenaed to appear before the Orleans Parish grand jury in connection with the investigation of the assassination of President Kennedy. His so-called connections with the CIA also originated with his own voluntarily offered stories. The facts as stipulated also establish that, Novel enthusiastically jumped into the fray with Garrison, offering news media statements about the Garrison investigation. His telegram to Garrison also states that he could testify on various matters including the probable murder of David Ferrie, seditious treason, and other matters that appeared to him to be grist for the Garrison mill.

As in his brief in opposition to the HMH motion, plaintiff points to no evidence by which he will establish malice, and my own search of the record discloses none.

The motions for summary judgment are each and both granted and judgment shall enter accordingly.

In view of this disposition on the motions it is unnecessary to consider the other grounds urged by both defendants to support summary judgment.