FIRST NATIONAL BANK COMPANY OF CLINTON, ILLINOIS, a National Banking Association, Plaintiff-Appellee,

v.

INSURANCE COMPANY OF NORTH AMERICA, a corporation and Hartford Accident and Indemnity Company, a corporation, Defendants-Appellants.

No. 78–1234.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1979.

Decided Sept. 28, 1979.

John P. Ewart, Mattoon, Ill., for defendants-appellants.

Andrew R. Laidlaw, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and SPRECHER, Circuit Judges, and LEIGHTON, District Judge.*

LEIGHTON, District Judge.

The issue in this appeal is whether the district judge committed procedural and

* Honorable George N. Leighton of the Northern District of Illinois is sitting by designation.

substantive errors when he granted partial summary judgment to plaintiff-appellee, a bank, and determined the liability of defendant-appellants, two insurance companies. The bank filed suit alleging that while bankers blanket bonds sold to it by the insurance companies were in force, losses totalling $421,116.03 were sustained from transactions effected by its president. In granting the partial summary judgment, the district judge ruled that the bonds required the insurance companies to indemnify the bank for losses caused by the president's fraudulent and dishonest conduct; and that the duty to indemnify had been established in the summary proceeding. He concluded that as to liability and damages, with exception of the amount of certain losses, there was no genuine issue of material fact between the parties. In addition, he held that the bank was entitled to recover pre-judgment interest under Illinois law, Ill.Rev.Stat.1971, ch. 74, § 2.

In our judgment, these rulings must stand. Review of a record which consists of pleadings, depositions, admissions, affidavits, memoranda, and an appendix of exhibits compels us to conclude that the district judge did not commit any error, procedural or substantive, when he granted the partial summary judgment. This opinion is extended only to give the reasons for our conclusion.

### I.

After the complaint was answered, pretrial motions ruled on, and discovery completed, plaintiff-appellee First National Bank and Trust Company of Clinton, Illinois, moved for summary judgment against defendants-appellants Insurance Company of North America and Hartford Accident and Indemnity Company.[1] The motion was supported by a 48-page memorandum whose introduction described the procedural history and subject matter of the litigation. A 280-page appendix of exhibits and documents admitted at depositions was filed. The memorandum contained footnote references to the appendix, affidavits, and depositions. The following are the facts about which it was claimed there were no material issues.

### A

Between February 1, 1968 and February 23, 1971, INA and Hartford issued bankers blanket bonds to First National for premiums that were paid. The amount of monetary coverage differed; but their provisions were in all pertinent parts identical. Both protected the bank from losses through any fraudulent or dishonest act of any employee acting alone or in collusion with others, to the limit of liability stated in the bonds. The one issued by INA covered losses up to $300,000, with $200 deductible. Hartford's was an excess bank employee dishonesty blanket bond that was limited to losses of up to $1,000,000, with a $300,000 deductible.

During the time these bonds were in force, Jack C. Wells was the bank's president and actively handled commercial loans to the whole range of the bank's customers. The processing of these loans was consistent with bank practice and policy. Beginning in May 1969 with the arrival in Clinton of George Lahmeyer, Wells' loan activities became almost exclusively limited to a close circle of his friends, relatives, and business associates that consisted of eight individuals including Lahmeyer, a man Wells had known in Cripple Creek, Colorado. Between May 1969 and March 1, 1971, Wells approved a total of 72 loans to these individuals, most of them without security. These borrowers had no prior ties to the Clinton, Illinois community; and in a vast

1. The suit was originally filed in the circuit court for the Sixth Judicial Circuit of Illinois, DeWitt County. It was removed to the district court pursuant to 28 U.S.C. § 1446. At the time, plaintiff-appellee was known as the DeWitt County National Bank of Clinton, Illinois. On January 1, 1977, the district court allowed a motion to amend all pleadings on their face to reflect the change of name to First National Bank and Trust Company of Clinton, Illinois.

Hereafter in this opinion, plaintiff-appellee will be referred to as First National or bank; defendants-appellants as INA, Hartford, companies, or the insurance companies, as the context may require.

majority of the cases, the loans were refinancing of original or earlier ones which had not been paid when due. Losses to the bank from these loans totalled $211,544.85.

The bank suffered other losses as a result of Wells' conduct. For some years, it had participated in loans made by the Farmers State Bank, Carlock, Illinois. Wells had been instrumental in acquiring that bank for his brother-in-law, Jack Hamilton, and an acquaintance, Donald Starks. After he became president of First National, Wells authorized transactions which continued the bank's participation in loans with Farmers State Bank. At subsequent meetings of the board of directors, Wells was orally directed to make no further participation loans, and to assure that the extent of First National's involvement in such transactions would be substantially reduced. On October 20, 1970, these participation loans were reviewed by the board, and a resolution was passed forbidding any more loan purchases.

Despite this prohibition, Wells continued to authorize such loan participations by First National. Later, when collection of the bank's portion of the loans was sought, it was discovered that many of the loan documents were forgeries. Starks disappeared in January 1971; and the Carlock bank was closed shortly thereafter. The total loss to the bank from these transactions was $113,748.60. In addition, Wells approved exorbitant fees and unjustifiable invoices that were paid out of bank funds to Leroy Neal, an architect, and one of the persons for whom Wells had approved loans which caused losses to the bank. Wells also diverted to himself monies which belonged to the bank from credit life insurance commissions. From these two categories of transactions, he caused the bank to suffer losses of $14,193.90 and $16,222.09, respectively.

On March 1, 1971, the bank's directors concluded that Wells had violated his duties as an officer and requested his resignation;

he submitted it 10 days later. An examination of bank records followed; and after an extensive investigation, INA and Hartford, as required by the bonds were notified of the losses. The two companies furnished their proof of loss forms which the bank filled out and mailed back, with supporting affidavits, on July 21 and 23, 1971. Liability was denied; this suit followed.

### B

Based on these facts, and others to which the memorandum referred, the bank contended that summary judgment was an appropriate procedure for the final determination of its suit. It pointed out that the action, and the motion for summary judgment, presented only one issue: whether the actions of the bank president constituted fraudulent and dishonest conduct within the terms of the bankers blanket bonds. An extensive argument was submitted on this issue, with citations from a long line of federal court decisions.

INA and Hartford responded to the motion for summary judgment with a joint motion to strike and, anticipating that their motion would be denied, they filed a response to the summary judgment motion. The motion to strike was grounded on the bank's alleged failure to comply with Rule 56(c) of the Federal Rules of Civil Procedure.[2] The companies alleged that the bank had supported its motion with documents and exhibits that did not have competent foundation and consisted of hearsay. For example, the two insurance companies contended that no competent foundation was offered for the copies of the bonds on which the bank's suit was based. They claimed that the proofs of loss on which the bank relied were without competent foundation; and that the affidavits of Wells' former secretary and the bank's executive vice president, important items offered by the bank in support of its motion for summary judgment, were unsigned.

---

2. That rule provided, in its pertinent part, that " . . . [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The response to the summary judgment motion was supported by a six-page affidavit in which Wells denied many of the sworn assertions of his former secretary, and those of other affiants for the bank. His denials covered all the categories of transactions which the bank claimed had resulted in losses.

In response to the joint motion to strike, in which the insurance companies appeared to be questioning the authenticity of their bonds and the adequacy of the affidavits submitted with the proofs of loss, the bank requested the insurance companies to admit 16 facts, including sale of the bonds and signing of the affidavits. The insurance companies admitted six of the facts and denied one, unequivocally. As to those requests to admit facts pertaining to the bonds, they objected, claiming that the "facts" sought to be admitted were in actuality conclusions. As to the requests pertaining to the affidavits, they claimed insufficient knowledge as to whether the originals had been signed by the individuals involved; this fact, they said, was within the sole knowledge of the persons who signed the affidavits, or of those who were present at the signing.

The bank immediately made a motion for an order ruling that the companies had failed to answer or object to these requests in accordance with Rule 36, Federal Rules of Civil Procedure; and therefore, that the requests be taken as admitted.[3] This motion was objected to, with the parties submitting briefs. Thereafter, the bank filed a reply in the summary judgment proceeding, summarizing the facts which Wells' affidavit had left uncontradicted.

The district judge heard the parties in oral argument, and after considering the extensive record before him, he overruled the various motions of the insurance companies, rejected their numerous objections, and sustained the bank's motion that certain paragraphs in its requests for admissions be taken as having been admitted. He then granted the bank partial summary judgment, ruling that under Ill.Rev.Stat. 1971, ch. 74, § 2, pre-judgment interest had to be paid by the insurance companies on the amount due.

In support of this appeal, the companies argue four points: A. that the district judge, in ruling on the summary judgment motion, considered an appendix which consisted of many items that were not proper under Rule 56(c), Fed.R.Civ.P.; B. that Wells' affidavit, and other matters in the record, raised many issues of fact which precluded grant of partial summary judgment; C. that the summary proceedings

3. Rule 36, Fed.R.Civ.P., provides in its pertinent part that

The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney, but, unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of 45 days after service of the summons and complaint upon him. If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; he may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why he cannot admit or deny it.

The party who has requested the admissions may move to determine the sufficiency of the answers or objections. Unless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served.

instituted by the bank's motion deteriorated into a trial by pleadings; and D. that since this suit was for unliquidated damages, the district judge erred in assessing pre-judgment interest under Illinois law. We will discuss these points in the same order.

## II.

### A

In proceedings under rule 56(c), documents and exhibits identified by affidavit may be submitted to support a motion for summary judgment. *See Schy v. Susquehanna Corporation*, 419 F.2d 1112, 1116 (7th Cir. 1970); *Pollack v. City of Newark, N. J.*, 147 F.Supp. 35, 39 (D.N.J.1956), *aff'd*, 248 F.2d 543 (3d Cir. 1957); *Upper West Fork River Watershed Association v. Corps of Engineers*, 414 F.Supp. 908, 914 (N.D.W. Va.1976), *aff'd*, 556 F.2d 576 (4th Cir. 1977), *cert. denied*, 434 U.S. 1010, 98 S.Ct. 720, 54 L.Ed.2d 752 (1978). When called on to decide whether there is any genuine issue of material fact to be resolved, a district judge in a federal summary judgment proceeding is authorized to consider materials beyond the pleadings, particularly depositions. *Novel v. Garrison*, 338 F.Supp. 977, 979 (N.D.Ill.1971). This would include exhibits which are made part of a deposition record. Generally, in ruling on a motion for summary judgment, only evidence or statements that would be admissible at a trial and having probative force, may be considered. 73 Am.Jur.2d *Summary Judgment* § 32 (1974). Of course, admissions obtained under rule 36, including matters deemed to be admitted, can form the basis for granting summary judgment. *Kirkland v. Cooper*, 438 F.Supp. 808 (D.S.C.1977); *Freed v. Plastic Packaging Materials Inc.*, 66 F.R.D. 550 (E.D.Pa.1975).

In this case, the bank states in its answering brief, unequivocally, that all of the documents included in the appendix about which the insurance companies complain had either been attached to an affidavit and authenticated by an affiant, identified at a deposition, or were deemed admitted when its request for admission of facts was not answered as required by Rule 36, Fed.R.Civ.P. This statement was not controverted by the companies in their reply brief. An uncontroverted statement in an appellee's brief may be taken as true. *Isthmian Steamship Co. v. California Spray-Chem. Corp.*, 300 F.2d 41, 49 (9th Cir. 1962); 5 C.J.S. *Appeal & Error* § 1345 (1958). Here, we accept as true the bank's statement establishing adequacy of the foundation for the documents included in the appendix. In fact, examination of the documents and exhibits show that they were produced by the insurance companies at depositions, or during the discovery phase of the case. Therefore, there is no merit to the argument that the district judge, when deciding the motion for summary judgment, had before him an appendix which contained many items not proper for consideration under the rule.

### B

In an appeal from a summary judgment, the only question presented is whether the answer or counteraffidavits were such as to raise a material or genuine issue of fact. A material or genuine issue of fact is raised when the facts alleged, if proven, are such as to constitute a legal defense. *Keehn v. Brady Transfer & Storage Co.*, 159 F.2d 383, 385 (7th Cir. 1947). Or, as has been said by one court, "[a] material issue is one which may affect the outcome of the litigation." *Mutual Fund Investors, Inc. v. Putnam Management Co., Inc.*, 553 F.2d 620, 624 (9th Cir. 1977).

In the case before us, the bank supported its motion for summary judgment with affidavits, documents, exhibits, depositions, and admissions of facts. In a detailed memorandum, it alleged that beginning sometime in May 1969, its president, Jack Wells, limited his commercial loan supervision activity to a circle of friends, relatives and business associates. Eight of the persons names had no ties to the community in which the bank did business before Wells approved their first loan application. Wells adopted a special procedure for handling their loans; and in the case of three of them, bank records

contained an address for them which Wells knew were false. During the time Wells approved these transactions, the bank had an express prohibition against out of territory loans until further notice from the regional administrator of national banks.

In all, as alleged by the bank, Wells approved 72 loans to the eight individuals. Payments, other than by refinancing or receipt of proceeds from other financing, were made in 15 of the loans. Only six of the 72 loans were fully paid. Many of them were unsecured. Wells did not allow these loans to become delinquent more than a few days, at most; and when payment was due, he simply refinanced or renewed the loan. He had several of the persons involved execute blank documents which he completed and used in other loan transactions.

Among the documents filed in support of the motion were summaries of each loan transaction taken from bank record which have always been available to the insurance companies. These loan summary charts, together with certain affidavits, identified each loan by maker, number, date, and application of the proceeds. They traced each transaction in detail. An examination of them in conjunction with the depositions, documents and exhibits, discloses the nature of each loan, as claimed by the bank, and the loss suffered.

With regard to the loans in participation with the Farmer's State Bank of Carlock, documents, depositions, and affidavits, with specificity, detailed each transaction, giving date, name of the borrower, and the basis for the conclusion later reached that many of the documents evidencing the loans were forgeries. Wells' participation in these transactions were detailed, including a report of bank examiners describing their discoveries concerning Wells' conduct with officers of the participating bank. As to the credit life commissions which the bank alleged were converted by Wells, his depositions, to which reference was made, contained his admissions that he had converted to his own use $5,555.77 in 1969 and $9,666.30 in 1970 from the premium account. This totalled $15,222.07, the amount which the district judge awarded the bank when he granted partial summary judgment.

Rule 56 does not provide a method by which the presence of an issue of fact can be determined; therefore, each case depends on the facts peculiar to it. A district court under the rule is not authorized to try issues of fact, but has the power to penetrate the pleadings and look at any evidential source to determine whether there is an issue of fact to be tried. The rule does not permit trial of disputed questions of fact on affidavits; but when its provisions are invoked by either party to a case, and a showing is made by the movant, the burden rests on the opposite party to show that he has a plausible ground for maintenance of his cause of action, or if a defendant, that he has a ground of defense fairly arguable, and of a substantial character. *Repsold v. New York Life Insurance Company*, 216 F.2d 479, 483 (7th Cir. 1954); *Ashwell & Co. v. Transamerica Insurance Co.*, 407 F.2d 762, 766 (7th Cir. 1969).

The companies' response to the motion for summary judgment consisted of three paragraphs. The first attacked the foundation for the documents and exhibits the bank had submitted in support of its motion. The second referred to an affidavit of Jack Wells which the companies claimed raised many questions of fact as to those matters relied on in support of the motion for summary judgment. The third referred to three discovery depositions which, it was claimed, contained matters raising questions of fact on the ultimate issue in the case.

Wells' affidavit consisted of 37 short paragraphs which generally denied the allegations contained in the affidavits of his former secretary, and that of the bank's executive vice-president. He did not deny that he had approved loans to a small circle of friends, relatives, and business associates; that most of the loans were unsecured; that of the eight persons directly involved, three had used a false address in applying for the loans, a fact which he knew; that he had authorized refinancings

of the loans when they became due and when not paid; and that his conduct caused the bank of which he was president to suffer severe financial losses.

With regard to the participation loans, Wells did not deny his involvement in transactions, many of whose documents were later found to be forged; nor did he deny engaging in the questionable conduct with those who controlled the Farmers State Bank of Carlock. In connection with the credit life commissions, Wells did not deny he converted to his own use monies which justly were bank funds.

It is a general rule of summary judgment procedure that denying the allegations of affidavits supporting a motion for summary judgment does not, *ipso facto*, create a genuine issue of material fact. *Fifty Associates v. Prudential Insurance Co. of America*, 450 F.2d 1007, 1010 (9th Cir. 1971). Mere denials unaccompanied by statements of any facts which would be admissible in evidence at a hearing, are not sufficient to raise a genuine issue of fact. *Piantadosi v. Loew's Inc.*, 137 F.2d 534, 536 (9th Cir. 1943). Therefore, neither the counteraffidavit with its mere denials and denials of immaterial facts, nor the questioning of the contents of three depositions, raised any material issue of fact which would have shown that Wells' conduct was other than as alleged by the bank. This being so, the remaining question was whether the conduct was fraudulent and dishonest within the terms of the banker's blanket bonds. Necessarily, to answer this question the district judge had to construe or interpret the pertinent terms of the bonds.

### C

The construction of an insurance policy, or the interpretation of a bankers blanket bond, is a question of law to be determined by a court. *Wiesmueller v. Interstate Fire & Casualty Co.*, 568 F.2d 40, 42 (7th Cir. 1978); *Delmar Bank of University City v. Fidelity & Deposit Co. of Maryland*, 428 F.2d 32 (8th Cir. 1970). Therefore, it was proper for the district judge, presented

with no material issue concerning commission of the acts by Wells, to determine whether the conduct in question fell within the term "any dishonest or fraudulent act of any of the Employees, . . ." of INA's bond, or within the term "any dishonest, fraudulent or criminal act committed anywhere by any of the Employees, . . ." of Hartford's bond. This did not turn the proceedings "into a trial by pleadings" as the companies now claim. It was an effective use of the relief available through a motion for summary judgment.

The words "dishonest" and "fraudulent" used with reference to conduct covered by a fidelity bond are to be given a broad meaning. *Citizens State Bank v. Transamerica Insurance Company*, 452 F.2d 199, 203 (7th Cir. 1971); *Elgin National Bank v. Home Indemnity Co.*, 583 F.2d 1281 (5th Cir. 1978). Their connotation is broader and more comprehensive than the word "criminal"; and they include acts which show a want of integrity or breach of trust. *Arlington Trust Co. v. Hawkeye-Security Insurance Co.*, 301 F.Supp. 854, 857–858 (E.D.Va.1969). Conduct may be fraudulent and dishonest within the meaning of a banker's blanket bond even though it falls short of a criminal offense. *First National Bank of Sikeston v. Transamerica Insurance Co.*, 514 F.2d 981, 987 (8th Cir. 1975).

Thus it has been held that where a bank employee creates a conflict of interest, looks after his own benefit, or acts in disregard of his employer's interests, subjecting the employer to a likelihood of loss, he is acting fraudulently and dishonestly within the meaning of a fidelity bond. *Boston Securities, Inc. v. United Bonding Insurance Co.*, 441 F.2d 1302, 1304 (8th Cir. 1971). A bank's assistant vice-president, in charge of an installment loan department, who approves a customer loan which exceeds authorized limits, and permits the customer to use names of other individuals as borrowers, commits a dishonest and fraudulent act within the meaning of the banker's blanket bond. *Miami National Bank v. Pennsylva-*

*nia Insurance Co.,* 314 F.Supp. 858 (S.D.Fla. 1970). Both misrepresentation of facts and deliberate deception by pretense and stealth constitute dishonest and fraudulent conduct within the terms of a fidelity bond to a bank. *Federal Deposit Insurance Corp. v. Aetna Casualty & Surety Co.,* 426 F.2d 729 (5th Cir. 1970). So, it goes without saying that it is dishonest for the president of a bank to secretly obtain its funds by putting forth others as being worthy of credit. *Maryland Casualty Co. v. American Trust Co.,* 71 F.2d 137, 138 (5th Cir. 1934); *see Arlington Trust Co. v. Hawkeye-Security Insurance Co., supra.* Therefore, the district judge ruled correctly when in granting partial summary judgment he concluded that Wells' conduct fell within the terms of the banker's blanket bonds, and that the insurance companies had to indemnify the bank for its losses. *Compare Citizens State Bank v. Transamerica Insurance Co.,* 452 F.2d 199 (7th Cir. 1971) *with Howard, Weil, Labouisse, Friedrichs Inc. v. Insurance Co. of North America,* 557 F.2d 1055 (5th Cir. 1977).

### D

Having determined liability under the bonds, the district judge concluded that under Illinois law, the bank was entitled to recover interest at 5% per annum on the total amount of its losses. As to INA, the interest began to run on September 19, 1971; and for Hartford, on September 21, 1971, both dates being 60 days after the bank had submitted its proofs of loss. The statute on which the district judge relied provides in its relevant part that:

"Creditors shall be allowed to receive [interest] at the rate of five (5) percentum per annum for all monies after they become due on any bond, bill, promissory note, or other instrument of writing . . . ." Ill.Rev.Stat.1977, ch. 74 § 2.

An insurance policy, or a bankers blanket bond, is a written instrument within the meaning of this statute. *Lewis Mach. Co. v. Aztec Lines, Inc.,* 172 F.2d 746, 750 (7th Cir. 1949); *Erickson v. Hospital Service Corp.,* 52 Ill.App.2d 464, 202 N.E.2d 147 (1964). It is also well recognized in Illinois that where a claim is in its nature unliquidated, interest cannot be recovered until its amount is ascertained. *Geohegan v. Union Elevated Railroad Co.,* 266 Ill. 482, 107 N.E. 786 (1915); *Bise's Supermarket, Inc. v. Valley Forge Insurance Co.,* 48 Ill. App.3d 822, 6 Ill.Dec. 657, 363 N.E.2d 186 (1977).

However, in *Laughlin v. Hopkinson,* 292 Ill. 80, 126 N.E. 591 (1920), the Illinois Supreme Court considered the rules that had been thought to govern the award of interest on a claim whose monetary amount had not been ascertained. It recognized that there is a broad general distinction between a claim sounding in damages, entirely unliquidated, and one that can be called a liquidated demand. After concluding that there was no reason why the amount to be paid by a debtor should be mitigated or reduced by the circumstances under which he refuses to pay, and thus makes liquidation of the claim against him difficult, the court said:

"The better rule, we think, is that interest will be allowed when the demand is of such a nature that its exact pecuniary amount can be ascertained by computation and when the time from which interest, if allowed, must run can be ascertained. Interest is given from the time when the defendant should have paid the amount due, . . . ." 292 Ill. 80 at 86, 126 N.E. 591 at 593.

Thus the rule has evolved that for interest to be awarded under the Illinois statute, the sum due must be liquidated; that is, be subject to exact computation; and the existence of a good faith defense does not preclude recovery of interest. *Hamilton Watch Co. v. George W. Borg Corp.,* 317 Ill.App. 271, 284, 46 N.E.2d 112 (1942); *Central National Chicago Corp. v. Lumbermens Mutual Casualty Co.,* 45 Ill. App.3d 401, 3 Ill.Dec. 938, 359 N.E.2d 797 (1977); *Haas v. Cravatta,* 71 Ill.App.3d 325, 27 Ill.Dec. 414, 389 N.E.2d 226 (1979); *KFK Corp. v. American Continental Homes, Inc.,* 71 Ill.App.3d 304, 27 Ill.Dec. 420, 389 N.E.2d 232 (1979). In other words, if the amount of a claim can be ascertained, or is capable

of ascertainment by mere calculation or computation, it is liquidated; if judgment, discretion, or opinion, as distinguished from calculation or computation is required to determine the amount of the claim, it is unliquidated. The proofs of loss which the bank submitted to the insurance companies contained a claim that was capable of ascertainment by mere calculation or computation. Thus, it was liquidated; and the fact that the ultimate judgment entered was less than the sum claimed did not make the amount unliquidated. Therefore, interest from the dates of the proofs of loss was properly awarded under Illinois law.

### III

For the reasons set forth above, we conclude that the district judge did not commit any error, procedural or substantive, when he granted the bank partial summary judgment. *See Kirk v. Home Indemnity Company*, 431 F.2d 554 (7th Cir. 1970); *Bloomgarden v. Coyer*, 156 U.S.App.D.C. 109, 479 F.2d 201 (D.C.Cir.1973). Accordingly, the judgment of the district court is affirmed.