Alexis KNEELAND, Plaintiff,

v.

BLOOM TOWNSHIP HIGH SCHOOL DISTRICT NO. 206, et al., Defendants.

No. 79 C 3601.

United States District Court, N. D. Illinois, E. D.

June 18, 1981.

Sylvia K. Smith, Flossmoor, Ill., for plaintiff.

John F. Canna, David Kula, Chicago Heights, Ill., for defendants.

MEMORANDUM OPINION

*Cross-Motions For Summary Judgment*

MAROVITZ, District Judge.

Plaintiff Alexis Kneeland commenced this action pursuant to 42 U.S.C. § 1983 alleging employment related sex discrimination. Defendants are Bloom Township High School, District No. 206 (the "District"); Eugene Neubauer, the principal of Bloom Trail High School (Bloom Trail), a school within the District; Dr. Richard Carrabine, superintendent of the District; and the individual board of education members of the District at the time of plaintiff's alleged discriminatory treatment. Plaintiff is a tenured faculty member of the District employed at Bloom Trail. Plaintiff's original complaint was cast in terms of alleged violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–86, and the regulation promulgated thereunder, 45 C.F.R. § 86. That complaint was dismissed pursuant to a motion made under Fed.R.Civ.P. 12(b)(6). *Kneeland v. Bloom Township High School, District No. 206*, 484 F.Supp. 1280 (N.D.Ill.1980). Plaintiff then recast her claim in terms of asserted violations of due process, equal protection, 42 U.S.C. § 1985, and state statutory and common law. In a memorandum opinion issued on September 18, 1980, the Court dismissed all of the claims asserted in plaintiff's amended complaint except her claims under the equal protection clause and Ill.Rev.Stat. ch. 122, § 24–4. Now pending before the Court are the parties' cross-motions for summary judgment. Fed.R.Civ.P. 56. For the reasons set forth below, the Court grants defendants summary judgment on plaintiff's equal protection claim and consequently dismisses plaintiff's state statutory claim for want of subject matter jurisdiction.

The undisputed facts of this action are as follows. Plaintiff has been a tenured physical education teacher at Bloom Trail since at least January 1979. In January 1979, plaintiff in addition held several extra-curricular positions, including that of Women's Sports Coordinator. Plaintiff's terms of employment as Women's Sports Coordina-tor are set forth in a "contract salary notice." The job description contained therein provides that: "The Women's Sports Coordinator will have responsibility for the girls [sic] interscholastic program and will be responsible to the athletic director for authorization and supervision." In January 1979, the athletic director at Bloom Trail was Mr. Daniel Candiano. Also among the athletic director's duties was responsibility for the planning and organizing of Bloom Trail's athletic facility use.

A basketball game between the Bloom Trail boys' basketball team and the boys' basketball team of another high school within the district was held at Bloom Trail after school hours on January 30, 1979. On January 26, 1979, Candiano instructed plaintiff to make a certain number of lockers then being used by girls available on January 30 for use by members of the visiting basketball team scheduled to play in the game on that date. Other locker space was available for use by the visiting team. Candiano's motivation for making the request, which plaintiff does not dispute, was for security purposes, based upon past experience with games between the two teams, in the event the visiting team had to be expeditiously removed from the facility. Plaintiff refused to have the girls' lockers made available, at least in part because she contested Candiano's judgment that those particular lockers were necessary to achieve the security goals sought by him. Plaintiff admits, however, that visiting boys' football teams generally use the girls' athletic locker room. Plaintiff's Deposition, p. 36.

By the beginning of the school day on January 30, 1979, the day of the game, plaintiff had yet to have the girls' lockers vacated as instructed by Candiano. During that day, the girls began to remove their belongings from their lockers pursuant to instructions from some women coaches, other than plaintiff, who Candiano had also apparently told to have the lockers made available. When plaintiff discovered that the girls were vacating their lockers, she instructed them to place their things back into the lockers and leave them there.

Plaintiff's Deposition, pp. 48–49. After the school day, the assistant principal of Bloom Trail instructed plaintiff to make the lockers available and she responded that she could not since the students had already gone home. When the visiting basketball team arrived, Candiano cut the locks off the girls lockers, removed their belongings, and left them unattended in the locker room. The girls were immediately provided with new locks by the school.

Thereafter, Superintendent Carrabine requested that Principal Neubauer to submit a report on the incident. On February 5, 1979, Neubauer submitted a memorandum to Carrabine. The memorandum was based upon conferences Neubauer had with both Candiano and plaintiff. The memorandum outlines the asserted justifications for both Candiano's and plaintiff's behavior, but draws no explicit conclusions as to the propriety of their behavior. The memorandum simply concludes that the incident was a product of a lack of cooperation, noting that:

> It is unfortunate when accessible and good quality athletic facilities are not shared for the safety and convenience of home and visiting teams.

> It is evident that we need to continue to work on communication, on procedures and routines, on responsibility and authority, and on all other elements that are so important to a well run and effective program at any level and in any area of the school.

Plaintiff's Deposition Exhibit 6.

Based upon the facts contained in the memorandum, Carrabine removed plaintiff from her position of Women's Sports Coordinator by way of a letter dated February 6, 1979. The letter indicates that Carrabine's decision was based upon his determination that plaintiff's conduct amounted to insubordination and uncooperative and disruptive behavior.

Sometime in early February, plaintiff submitted to Neubauer a list of personal articles of the girls whose lockers were broken into by Candiano, totaling $396.50 in estimated value, that plaintiff claimed were lost or stolen as a result of Candiano's action. Upon receiving this list, Neubauer made several attempts to obtain from plaintiff the names of girls whose property allegedly had been lost or stolen. Plaintiff failed to cooperate. Apparently, no action was ever taken to replace or compensate for the allegedly lost or stolen property. Nor was Candiano ever disciplined for breaking into the girls' lockers.

Plaintiff sought to have overturned Carrabine's decision to remove her from her position as Women's Sports Coordinator by filing a grievance with the District's Board of Education pursuant to a collective bargaining agreement in effect between the District and its teachers. While plaintiff's grievance was pending the District posted a notice, as required by the collective bargaining agreement, advising that the District was receiving applications for the position of Women's Sports Coordinator at Bloom Trail. In response, the bargaining representative of the bargaining unit of which plaintiff is a member posted a notice discouraging members of the union from applying for the position while plaintiff's grievance was pending. Only one applicant was received, a qualified male, who was hired while plaintiff's grievance was still pending. The Board by a letter dated June 25, 1979 informed plaintiff that it had determined that plaintiff's loss of the position of Women's Sports Coordinator did not occasion any violation of the applicable collective bargaining agreement. The Board's determination was made without the benefit of any formal hearings, and none were apparently required under the terms of the agreement. Plaintiff then commenced the instant action.

■ The principles that guide a federal court when ruling upon a motion for summary judgment are well-settled. Summary judgment shall not be granted unless the record reveals "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of showing the propriety of summary judgment relief rests with the movant.

First National Bank Company of Clinton, Illinois v. Insurance Company of North America, 606 F.2d 760 (7th Cir. 1979). Further, all inferences that may be drawn from the evidence shall be drawn in favor of the party against whom summary judgment relief is sought. *Wang v. Lake Maxinhall Estates, Inc.*, 531 F.2d 832, 835 (7th Cir. 1976). When, however, a summary judgment movant has made a threshold showing of the propriety of summary judgment, the adverse party may not defeat the motion by merely relying upon the allegations or denials of his pleadings. Fed.R.Civ.P. 56(e); *First National Bank Company of Clinton, Illinois v. Insurance Company of North America*, 606 F.2d at 767.

▆ Hence, the narrow question now before the Court is whether the record presents any factual question material to plaintiff's claim of discrimination. The material inquiry in employment discrimination cases, stated simply, is whether an employer has treated the plaintiff less favorably than others for impermissible reasons, such as, for example, sex. *See Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). To prevail on such a claim of discriminatory treatment, a plaintiff must establish purposeful discriminatory treatment. *Grano v. Department of Development of City of Columbus*, 637 F.2d 1073, 1081–82 (6th Cir. 1980); *Mescall v. Burrus*, 603 F.2d 1266, 1271 (7th Cir. 1979). Moreover, a plaintiff who establishes that an impermissible factor, such as sex, was a motivating factor behind a decision affecting his employment may nonetheless not prevail, at least when proceeding under an equal protection theory, if the challenged decision would have been made in the absence of consideration of the impermissible factor. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 270–71 n.21, 97 S.Ct. 555, 566 n.21, 50 L.Ed.2d 450 (1977).

▆ Claims of discriminatory treatment, because they involve questions of intent and motivation, will rarely lend themselves to disposition by way of the summary judgment process. *See, e. g., Theobald v. Bo-*tein, Hays, Sklar & Herzberg, 493 F.Supp. 1, 5 (S.D.N.Y.1979). The undisputed facts in the record of the instant case, however, clearly make plaintiff's claim appropriate for summary judgment relief in defendants' favor. Indeed, the record is completely devoid of any factual disputes which if ultimately resolved in plaintiff's favor could fairly give rise to an inference that plaintiff's removal from the position of Women's Sports Coordinator was due to sex discrimination. Instead, the record indicates only that the sole cause for plaintiff's termination was conduct by her that Carrabine deemed to amount to insubordination. Plaintiff violated explicit instructions from one with supervisory authority over her and, moreover, enlisted the aid of other teachers and students in her act of insubordination. A factual dispute as to whether Candiano's decision to use the girls' lockers was wise or prudent is not material to plaintiff's claim.

Plaintiff attempts to make much of the fact that Candiano, a male, was not disciplined for his part in the locker incident, which she alleges caused the loss of the property of several girls, while she, a female, was disciplined. The Court finds, however, that this fact, standing alone, does not support her claim of discrimination. Candiano and plaintiff were not in such similar circumstances so as to reasonably allow a comparison of defendants' treatment of Candiano with their treatment of plaintiff with respect to the locker incident. Candiano's participation in the incident was in an administrative and supervisory capacity, while plaintiff's was that of a teacher expected to abide by Candiano's decision, or at least timely appeal it through the proper channels. While the Court does not mean to express any support for Candiano's decision, he was at most guilty of exercising poor judgment pursuant to his discretionary authority, and not of disobedience of an explicit directive as was plaintiff. As to the alleged loss of some girls' property, the Court only notes that Neubauer did attempt an investigation into this aspect of the incident, an investigation that was somewhat stymied by plaintiff's lack of cooperation.

■ Plaintiff also argues that both the fact that neither Neubauer nor Carrabine made a detailed investigation of the incident and the fact that the board held no hearings support her claim. As to the former, the point of plaintiff's argument is lost upon this Court since plaintiff does not dispute that Neubauer or Carrabine was aware of the facts surrounding the incident. Concerning the board's failure to conduct hearings, plaintiff does not assert that it was either required to hold any or that it customarily does when deciding grievances brought pursuant to a collective bargaining agreement.

■ Plaintiff contends that the fact she was given no warning before she was removed from the position of Women's Sports Coordinator suggests that she was treated discriminatorily. Plaintiff, however, has summoned forth no evidence that teachers within the District are usually given warnings before more severe disciplinary action is taken.

■ Further, plaintiff points to the fact that the District employs more male coaches than female coaches. A bald showing of such statistical disparity is insufficient to raise an inference of discrimination. *Grano v. Department of Development of City of Columbus*, 637 F.2d at 1078.

Finally, the Court feels compelled to pause and voice a few observations about this piece of litigation, observations which the Court hastens to add did nothing to color its resolution of the legal questions presented herein. Section 1983 was enacted to make available a federal forum for persons whose federal rights have been abridged by state actors. *See generally Monell v. New York City Department of Social Services*, 436 U.S. 658, 685, 98 S.Ct. 2018, 2033, 56 L.Ed.2d 611 (1978). This case may well involve many things, including apparently a certain amount of pettiness and exercise of poor judgment by some of the parties concerned on both sides. What this case certainly does not involve, however, is a violation of any of plaintiff's federally protected rights. Rather, this case is but another example of a conflict that should have been, and in the past likely would have been, resolved extra-judicially at the community level in the spirit of compromise and reconciliation. What is particularly distressing to the Court about this case is that compromise and reconciliation were not exercised by public school officials so as to serve as examples to the school children within the District. Further, if they had done so they could have avoided a considerable expenditure of public funds, a not inconsequential consideration when today most public school systems seem to be suffering from some sort of pecuniary illness and are being undermined by defections to private schools. Indeed, the defendants in this action even rebuffed the Court's offering of its good offices to arrive at an amicable resolution of this matter. In short, this dispute may well have been resolved less acrimoniously at the different levels it presented itself within the District, but section 1983 does not authorize it to be now resolved in a federal courtroom.

In sum, the Court grants defendants' motion for summary judgment on plaintiff's equal protection claim and denies plaintiff's motion. There being no federal claim to which plaintiff may pend her state law claim under Ill.Rev.Stat. ch. 122, § 24–4, that claim is hereby dismissed without prejudice. Fed.R.Civ.P. 12(h)(3). Accordingly, judgment shall be entered in defendants' favor on plaintiff's equal protection claim and this action shall be dismissed. An appropriate order shall enter.