*In re* HENRY PRESSWOOD.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* HENRY PRESSWOOD, Respondent-Appellant.)

First District (2nd Division)   No. 76-50

Opinion filed July 19, 1977.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Linda Ann Miller, and Jeffrey Singer, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Following a bench trial, Henry Presswood, respondent, was found to be in need of mental treatment and remanded to the custody of the Department of Mental Health for hospitalization. (Ill. Rev. Stat. 1975, ch. 91½, par. 1—11.) Presswood appeals, contending that the State failed to establish by clear and convincing evidence that he was a person in need of mental treatment as defined in the Mental Health Code.

We affirm.

Respondent had been charged with the offense of burglary but on September 25, 1975, was found unfit to stand trial. The court then directed that a hearing be conducted in accord with the procedures of the Mental Health Code. (Ill. Rev. Stat. 1975, ch. 91½, par. 1—1 *et seq.*) A social worker employed by the Illinois State Psychiatric Institute thereupon filed a petition on October 8, 1975, requesting an adjudiciation of respondent's need for hospitalization. Attached to this petition were two certificates of need for hospitalization prepared by Drs. Goldblatt and Siomopoulos, staff psychiatrists for the Illinois Department of Mental Health.

In his certificate Dr. Goldblatt stated that he examined Presswood on October 7, 1975, and found respondent to be "flat in affect, with reduced motor activity." He also exhibited "frequent inappropriate smiling" and "occasional apparent loss of contact" while "staring into space." Additionally, respondent demonstrated "poor orientation to person(s) and situation(s)" around him, and he spoke in a "vague" manner while he described impulsive destructive behavior. Dr. Goldblatt concluded that Presswood was in need of immediate mental treatment because he was "possibly dangerous to others."

Dr. Siomopoulos executed the second certificate and stated therein that he also performed a psychiatric interview of the respondent finding that Presswood "was circumstantial and at times irrelevant in his associations"; that "his affect was flat" and "inappropriate"; and that he was "suffering from schizophrenia." Dr. Siomopoulos concluded that Presswood was in need of mental treatment "because he is unable to care for himself." Both certificates recommended that the respondent be hospitalized.

The public defender was appointed to represent respondent, and the hearing in this matter was conducted on October 14, 1975. Two witnesses testified for the prosecution: Shirley Bell, Presswood's sister, and Dr. Siomopoulos.

The respondent's sister testified that she lived with her brother prior to his incarceration and hospitalization. Bell stated that "some days"

Presswood "would be all right and some days he wouldn't. Some days he would talk right" and some days he would talk to himself. The witness also testified that respondent would not bathe, change his clothes or comb his hair unless someone directed him to do it. However, she admitted that when her brother was told to do these things, he would comply.

Bell further stated that respondent ate incessantly; that at times he would not allow children to go past him in the apartment hall; and that while out on bond for another criminal charge he missed a court date.

Presswood's sister also testified that although her brother was unemployed while living with her he was regularly receiving a monthly support check. However, she stated that respondent would spend the entire check in one day, and on one occasion she believed her brother used the money from the check to purchase wine and gifts and cigarettes for his friends.

When asked whether her brother became involved in altercations with other people, Bell stated: "He wouldn't actually fight. Maybe if he couldn't have things his way, he might stand outside and break a window, * * *." The witness then testified that her brother did break their apartment window with a rock on the day he was taken to jail. However, she conceded that Presswood had never tried to injure himself or others in her presence.

Bell testified that her brother was 22 years of age, and that he had been manifesting the described behavior pattern for a period of about two years since his return from Vandalia when he had been imprisoned about six months.

Dr. Siomopoulos testified: "My examination consisted of a formal psychiatric interview. It took place on the 6th of September. Mr. Presswood was at times coherent but mostly irrelevant and transitional and circumstantial in his associations. He kept smiling inappropriately throughout the interview. His responses were vague, extremely vague conveying very different information. For example, to the question whether he knew why he was unfit to stand trial he replied to quote him, —'He wanted a replacement.' I asked him who is he. He said, 'The judge,' but he was unable to give his name, and then he said the judge told him to come back, but he was unable to elaborate on that and give more specific information.

"He was extremely concrete in his responses which is characteristic of schizophrenia and—for example, when I asked him how does he support himself, he replied, 'I'm eating a lot.' His affect was flat, inappropriate.

He stated that he had been in the prison at Vandalia about two years ago and he stayed there for several months and when he came out of the prison he went to live with his sisters and he would stay at home most of

the time watching TV, not feeling any need to work. He stated the last time he worked was four years ago.

In general Mr. Presswood seems—presents evidence of thought disorder, looseness of association, complete thinking impoverished, flat affect. He seems to be suffering from schizophrenia, simple type.

I would think on account of his mental illness he's unable to communicate to others, at least, to me during the interview, and I don't think he's able to provide for his own physical needs on the basis of the testimony. He's not able to make good use of his money. He's not able to dress himself and take care of some of his basic needs unless he's prodded by somebody else. So I would think he's in need of mental treatment on the basis of this." The witness expressed his opinion that respondent's behavior would continue if he did not receive hospital treatment.

On cross-examination Dr. Siomopoulos testified that money mismanagement was basically poor judgment, and this fact alone was not enough to justify committing an individual to a hospital. However, he stated his opinion that money mismanagement would be a sufficient basis for the conclusion that a certain person was in need of mental treatment if it could be established that such conduct was the result of a mental illness.

Respondent moved for a directed finding on the ground that the State failed to prove a prima facie case. The trial judge in denying the motion observed that a person's basic needs involve the use of money; that respondent spends his support check in one day; that he sits and watches television all day; that he is unable to function without his sisters; that it is doubtful whether one who is unable to communicate meaningfully with others would be able to function on his own; that respondent would be unable to obtain lodging and food and would be dependent on others, and that respondent was unable to care for his own basic needs. Respondent was thereupon found to be in need of mental treatment and ordered hospitalized at the Manteno State Hospital.

Section 1—11 of the Mental Health Code of 1967 (Ill. Rev. Stat. 1975, ch. 91½, par. 1—11) defines a person who is in need of mental treatment as one afflicted with a mental disorder (apart from aged or mentally retarded persons) who, as a result of that disorder, is likely to be of harm to himself or others or is unable to protect himself from harm or to provide for his own physical needs. The facts upon which such conclusion must be based are to be proven by clear and convincing evidence. *People v. Sansone* (1st Dist. 1974), 18 Ill. App. 3d 315, 326, 309 N.E.2d 733, 741; see also *In re Stephenson* (1st Dist. 1976), 36 Ill. App. 3d 746, 344 N.E.2d 670, *appeal allowed*, 63 Ill. 2d 554.

The testimony of Shirley Bell reveals that respondent is unable to care for his own basic needs, and that he has a tendency towards outbursts of

temper and other antisocial behavior. The psychiatrist testified that, based upon the facts related by the respondent's sister, respondent was unable to care for his own basic needs, and that based upon his own interview of respondent, the latter was unable to meaningfully communicate with others. The psychiatrist correlated respondent's behavior with the mental disorder of schizophrenia (simple type), determined that such behavior would continue without hospitalization and recommended that respondent be hospitalized. While some of respondent's particular behavioral traits, of themselves, may not appear abnormal, such as his watching television all day, compulsive and excessive eating and unconcern over his lengthy unemployment, it was reasonable, when such traits are considered in conjunction with the other behavioral abnormalities set forth in the record viewed with his history of deteriorating behavior since his release from incarceration some two years before trial, for the trial judge to conclude that respondent was suffering from a mental disorder which resulted in his inability to care for his own physical needs, and that mental treatment and hospitalization were required as corrective measures.[1] (See e.g., *People v. Ralls* (1974), 23 Ill. App. 3d 96, 100-01, 318 N.E.2d 703.) The case of *In re Welch* (1975), 28 Ill. App. 3d 716, 329 N.E.2d 286 (abstract), cited by respondent in support of his position, is factually distinguishable from the instant matter as is the case of *People v. Bradley* (1974), 22 Ill. App. 3d 1076, 318 N.E.2d 267.[2]

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

DOWNING, P. J., and STAMOS, J., concur.

---

[1] The court notes a report to this court from representatives of both the State's Attorney and the Public Defender that Presswood was apparently discharged from Manteno in February or March 1976 but was later found in a jury trial to be in need of mental treatment. It appears that Presswood is presently committed to the Chester Mental Health Center as a person in need of mental treatment as a result of the jury finding of December 13, 1976, which was not appealed.

[2] We feel constrained to comment that the involuntary hospitalization of an individual for mental treatment is a deprivation of that person's liberty as would be his imprisonment. The purpose of the Mental Health Code of Illinois is to safeguard both the persons involved in such proceedings and the public.

This court believes that the petitioners should exercise their most professional and compassionate expertise to establish a "clear and convincing" record. We consider it the responsibility of the State's Attorney and the Department of Mental Health to present their case with thoroughness and specificity so as to lessen the need for review.