Raymond Lee McKINNEY, Plaintiff,

v.

Velma GEORGE, Chicago Read Mental Health Center, Dennis Griffin, Individually and as Chief of Staff on Unit A North of Chicago Read Mental Health Center, Dorothy Shore, Individually and as a Staff Worker at Chicago Read Mental Health Center, the City of Chicago, John P. Collins, Individually and as Commander of the 24th District Chicago Police Department, Officer Sparacino, Individually and as a Chicago Police Officer, No. 5795, Anthony Agnoli, Individually and as a Chicago Police Officer, Officer Sauli, Individually and as a Chicago Police Officer, No. 76797, Officer John Doe, Nos. 1 Through 8, Individually and as Chicago Police Officers, Defendants.

No. 80 C 0831.

United States District Court,
N.D. Illinois, E.D.

Feb. 8, 1983.

Michael E. Rigney, Jerald Solovy, Jenner & Block, Chicago, Ill., for plaintiffs.

Richard J. Toman, Darka Papushkewych, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Raymond Lee McKinney ("McKinney") brought this civil rights action under 42 U.S.C. § 1983 alleging that he was subjected to a series of unlawful arrests and involuntary commitments to mental institutions. McKinney asserts these acts were initiated by defendant Velma George over a three-year period to harass and intimidate him because he refused to sign disqualification affidavits relating to an election judge and a voter. George is alleged to have used her political influence as a precinct captain to involve the other defendants. We previously have granted a motion to dismiss defendants Chicago Read Mental Health Center and Chicago Police Officer Sauli,[1] and motions for summary judgment in favor of defendants Dennis Griffin and Dorothy Shore.[2] The case is presently before this Court on a motion for summary judgment by defendant police officers Cardon, Hart, Hamilton, Agnoli, Sparacino and Collins and by the City of Chicago.[3] For the reasons stated below, the Court will grant that motion.

### Standard for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, the party moving for a summary judgment has the burden of showing that there is no dispute as to any genuine issue of material fact and that they are entitled to judgment as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir.1979). The non-moving party is entitled to all reasonable inferences that can be made in its favor from the evidence presented. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Moutoux v. Gulling Auto Electric, Inc.,* 295 F.2d 573, 576 (7th Cir.1961). Once the moving party conclusively shows that genuine issues of material facts are absent, the nonmovant may not merely rely on its pleadings, but rather must affirmatively set forth specific facts showing that there are issues which must be decided at trial. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). Nor may the non-moving party create an issue of material fact through conjecture or speculation as to what evidence might be adduced at trial or turned up by further discovery. *Abiodun v. Martin Oil Service, Inc.,* 475 F.2d 142, 144 (7th Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 57, 38 L.Ed.2d 86 (1973); *Kirk v. Home Indemnity Co.,* 431 F.2d 554, 560 (7th Cir.1970). If the non-movant does not affirmatively show by admissible evidence that there are material issues, then summary judgment is justified and appropriate. As the United States Court of Appeals for the Seventh Circuit has observed, "[w]ith the ever increasing burden upon the judiciary, persuasive reasons exist for the utilization of summary judgment procedure whenever appropriate." *Kirk, supra* at 560. With these standards in mind, we will examine the allegations presented in the second amended complaint and the arguments for and against summary judgment.

### Count I—Federal Due Process

Plaintiff alleges that the acts of all defendants[4] violated his federal constitutional rights of due process.

The complaint focuses on events occurring on December 17, 1978, and November

---

1. Memorandum Opinion and Order, April 21, 1981. The same order denied motions to dismiss made by Dennis Griffin, Dorothy Shore, the City of Chicago and police officers Agnoli, Sparacino and Collins.

2. Memorandum Opinion and Order, February 2, 1982. Griffin and Shore were employees of Chicago Read Mental Health Center.

3. Defendants' motion to strike their Exhibits 1 and 2 is also before the Court. Since plaintiffs have joined in the motion, we grant it. We also grant defendants' motion to substitute the affidavit of Yvonne Stafford for Exhibits 1 and 2.

4. Since defendant Velma George does not join in this motion for summary judgment, the constitutionality of her actions will not be analyzed.

13, 1979. On December 17, 1978, McKinney was arrested for disorderly conduct by Chicago police officers Cardon and Hart. McKinney alleges Cardon and Hart then transported him to Cermak hospital. McKinney was subsequently transported to Chicago Read Mental Health Center where Chicago police officer Agnoli signed a petition to initiate his involuntary commitment.

On November 13, 1979, McKinney alleges Chicago Police Commander Collins directed officer Hamilton to apprehend McKinney and transport him to Chicago Read Mental Health Center on the basis of a petition Collins received from Velma George and twenty-three of McKinney's neighbors. When McKinney was taken to Chicago Read, Chicago police officer Sparacino signed the petition initiating his involuntary commitment.

The essence of McKinney's complaint is that he was denied due process by the defendants because the officers involved lacked probable cause to arrest him for disorderly conduct on December 17 or to apprehend and transport him to a mental health institution and initiate the process for involuntary commitment on either December 17, 1978, or November 13, 1979.

█ Due process rights are those which are of such fundamental importance so as to require compliance with a process which will guarantee that no arbitrary or unreasonable deprivation is made of life, liberty or property. *Harrah Independent School District v. Martin,* 440 U.S. 194, 198, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1978). Due process rights require that arrests not be made without probable cause. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The standard for probable cause to arrest has been defined by the United States Supreme Court in *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964): "[W]hether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that

the petitioner had committed or was committing an offense." *Id.* at 91, 85 S.Ct. at 225. By its very nature, since probable cause deals with reasonableness and probabilities, there are no straight line measurements for legal technicians to employ in determining whether a particular arrest was justified. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). Instead, to justify "probable cause," an evaluation of the totality of the circumstances of a specific arrest, including both factual and practical considerations, must lead to the conclusion that the arrest was reasonable and prudent. *Id.* While probable cause must clearly be more than mere suspicion, it is not required that an officer have evidence sufficient to establish guilt beyond a reasonable doubt. *Dumbra v. United States,* 268 U.S. 435, 441, 45 S.Ct. 546, 548–49, 69 L.Ed. 1032 (1925); *accord, People v. Paine,* 6 Ill.App.3d 378, 286 N.E.2d 35 (1972).

█ Probable cause to arrest may be supported by information that is not observed personally by the arresting officer, even though the information is hearsay and inadmissible in court. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. Simon,* 409 F.2d 474, 476 (7th Cir.), *cert. denied,* 396 U.S. 829, 90 S.Ct. 79, 24 L.Ed.2d 79 (1969); *Daniels v. United States,* 393 F.2d 359, 361 (D.C.App.1968). Under the doctrine of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the credibility of the information and the person supplying the information must be shown. In the case of information supplied by an identified ordinary citizen, reliability is presumed. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Butler v. Goldblatt,* 432 F.Supp. 1122 (N.D.Ill.1977), *aff'd in part, rev'd in part on other grounds,* 589 F.2d 323 (7th Cir.1978), *cert. denied,* 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 53 (1979).[5] The reliability of an identified citizen complainant need not be personally known to the officer making the arrest, so long as his

---

**5.** This doctrine is called the citizen-informer doctrine within Illinois case law and has been

upheld by the Illinois Supreme Court. *People v. Lucus,* 41 Ill.2d 370, 243 N.E.2d 228 (1968).

superior who authorizes the arrest can vouch for the credibility of the informant. *Meiners v. Moriarity,* 563 F.2d 343 (7th Cir. 1977); *Daniels v. United States,* 393 F.2d 359, 361 (D.C.Cir.1968). *See also People v. Kahl,* 63 Ill.App.3d 703, 20 Ill.Dec. 487, 380 N.E.2d 487 (1978) (wherein the Illinois Appellate Court finds that under Illinois law there is no requirement for corroboration of information supplied by an identified citizen informant).

In the case at bar, no genuine issue of material fact exists as to whether there was probable cause to arrest McKinney on December 17, 1978, or to apprehend him on November 13, 1979.[6] On both dates either the arresting officer or the superior who authorized the arrest had been given information stating sufficient facts about the behavior of the plaintiff to cause a prudent man to conclude that McKinney should be apprehended.[7] On each occasion the information was supplied by ordinary citizens whose credibility is presumed. McKinney has adduced no evidence of facts that would have led the police officers to question the credibility of the citizen-informers. McKinney's allegations that the complaints were fabricated may present a genuine issue regarding the behavior of defendant Velma George or of Wanda Harris, but those allegations do not present a genuine issue about the behavior of the policemen without some shred of evidence that a prudent policeman should have further investigated these presumptively valid citizen complaints.[8]

■ Since the Court finds there was probable cause for the arrest of McKinney

---

**6.** The evidence before the Court indicates McKinney was arrested on December 17, 1978, for disorderly conduct. On November 13, 1979, however, no formal arrest was effected, rather McKinney was simply taken into custody and transported to a mental health institution. Both plaintiff and defendant agree in their pleadings that the *Beck v. Ohio* standard for warrantless arrests is also an appropriate standard by which to judge the constitutionality of the "apprehension" of McKinney on November 13, 1979. We agree and note that an Illinois Appellate Court has held that since a purpose of the Illinois Mental Health Code is to provide treatment, the full panoply of criminal safeguards is not required. *People v. Sansone,* 18 Ill.App.3d 315, 327, 309 N.E.2d 733 (1st Dist. 1974).

**7.** The arrest report on December 17, 1978, said McKinney had been arrested on signed complaints of Wanda Harris, building representative, saying that tenants at 6151 N. Winthrop had been kept awake for the previous two nights by McKinney "screaming from his window." The petition which caused Collins to order McKinney to be picked up for transportation to a mental institution on November 13, 1979, stated that McKinney was "a nuisance, dangerous, intimidating to people living here and around him."
Plaintiff argues that both the petition and the police report are inadmissible hearsay and thus cannot be considered by the Court for this summary judgment motion. The police report of December 17, 1978, is admissible under F.R.E. 803(6) as a business record since plaintiff has not introduced any evidence which would controvert defendants' assertion that such reports are made as a regular course by the police department. *Rosario v. Amalgamat-*

ed Ladies Garment Cutters' Union, Local 10, 605 F.2d 1228, 1251 (2d Cir.), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1979). Admission of the report, however, would not assure admission of the statements of Wanda Harris contained in the report if they are found to be hearsay. [In *Rosario,* the statements contained in the report were admissible because they were by a party to the action and thus admissible under F.R.E. 801(d)(2) ].
In the instant case, both Wanda Harris' statements and those in the citizen petition of November 13, 1979, are admissible not because they fall into a hearsay exception, but because they are not hearsay at all under the definition in F.R.E. 801(c). For the motion before the bar, the Court is not concerned with the truth of Harris' statements or those in the 1979 petition, but with whether such statements, made to a police officer by presumptively reliable citizens, can form the basis for probable cause. Since we are concerned with the effect of the statements on the officers only, not their truth, they are circumstantial evidence, not hearsay.

**8.** While the standard for a valid arrest under *Beck v. Ohio* requires that probable cause exists based on facts known at the time of the arrest, it should not go unnoticed that on each date in question, two physicians subsequently found McKinney to be in need of detention and treatment at a mental institute. While such a subsequent diagnosis could not create probable cause where it did not exist prior to arrest or apprehension, it does serve to corroborate the prudence of the decision by the police defendants to initiate involuntary commitment proceedings by arrest or apprehension and transportation to a mental institution.

on the two occasions in question, it may similarly be concluded that there was probable cause to transport McKinney to a mental institution and initiate the process of involuntary commitment. Involuntary commitment to a mental institution is authorized under Illinois law when an individual is "in such a condition that immediate hospitalization is necessary for the protection of such person or others from physical harm." Ill.Rev.Stat. ch. 91½, § 3–601(a) (1981).[9]

■ There is no evidence presented by plaintiff that puts into question the fact that the Chicago police received presumptively reliable information about McKinney's actions which would cause a reasonable man to believe McKinney might injure himself or others.[10] It is not required by the statute or case law that the arresting officer personally observe erratic behavior in the case of a person who needs hospitalization for mental illness,[11] anymore than it is required for an officer to arrest only

those whom he personally observes committing a crime.[12] Such a rule would be impractical and potentially dangerous, not only to the public at large, but to the individuals in need of medical treatment. Instead, the checks and balances against inappropriate detention of individuals under the Mental Health Code of Illinois are achieved by the requirements of swift examination by medical personnel, including certification of the need for detention by at least two physicians within twenty-four hours of admission, Ill.Rev.Stat. ch. 91½, § 3–604 (1981), and a hearing on commitment within five days. Id. at § 3–611. No action by these defendants prohibited or delayed the safeguards provided in the statute. We find no material issue as to due process violations in the apprehension and transportation of McKinney as undertaken by these defendants.

■ McKinney next alleges that certain defendant officers violated his rights of due process by filling out the petitions which

**9.** This statute was in effect at the time of McKinney's November 13, 1979, commitment. A nearly identical provision existed in the Mental Health Code in effect at the time of December 17, 1978, at Ill.Rev.Stat. ch. 91½, § 7–1 (1977).

**10.** See supra note 6.

**11.** U.S. ex rel. Mathew v. Nelson, 461 F.Supp. 707 (N.D.Ill.1978). The Court in Mathew found that the Illinois Mental Health Code did not require a recent overt act as a prerequisite to involuntary commitment (id. at 709), and that the absence of such a requirement was not violative of due process. Id. at 710. Illinois appellate courts have reached the same conclusion in interpreting the state's mental health code. People v. Sansone, 18 Ill.App.3d 315, 324, 309 N.E.2d 733 (1974).

**12.** The Illinois Mental Health Code at section 3–606 permits a police officer to take a person into custody and transport him to a mental health facility when the officer observes behavior he reasonably believes should subject the individual to involuntary admission. But contrary to plaintiff's assertions, this section does not constitute a prohibition against an officer taking into custody an individual whose erratic behavior he has not observed. In plain fact, the statute does not address a situation like that at bar where the police have probable cause to take an individual into custody but have neither personally observed his erratic

behavior nor been presented with petitions and certificates prepared according to the statute. Since it would be impractical and hazardous to require a private citizen to attempt to detain and transport a person whose mental health rendered him a danger to himself and others, we conclude that such transportation by the police is valid so long as probable cause exists to believe the individual is in need of hospitalization and the checks and balances required by the statute are adhered to. Our conclusion is bolstered by the Report (of the) Governor's Commission for Revision of the Mental Health Code of Illinois (1976) submitted to the legislature with the text of the present mental health code. In that report, the commission decries the need for police, who must by default play a significant role in hospitalization for mental illness, to use the subterfuge of arrests for disorderly conduct and criminal incarceration to initiate a transfer to a mental health facility. Id. at 53. To avoid this problem, the commission suggested the addition of § 3–606 under which officers could petition for the involuntary admission of persons whose bizarre and threatening behavior they observed. Id. While we may wish the legislators had also detailed the role of policemen receiving a reliable complaint of such behavior, the fact that it was not addressed does not constitute a prohibition of reasonable and prudent behavior on the part of the police.

initiate the emergency involuntary commitment process under Illinois statute. Since involuntary commitment to a mental institute is a deprivation of liberty [*In Interest of Presswood,* 51 Ill.App.3d 104, 9 Ill.Dec. 185, 366 N.E.2d 442 (1977)], each stage of the proceedings prior to commitment must be examined. *Minnesota ex rel. Pearson v. Probate Court,* 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940). We have previously concluded that the officers had probable cause to fill out the petitions. The remaining question is whether the manner in which they were filled out, that is the information supplied, comported with due process.

■ The petitions in question consist of pre-printed forms whose questions seek to elicit information required by the Illinois Mental Health Code. The information elicited becomes the starting point for the subsequent medical examination. It may also be used at the subsequent commitment hearing. To meet due process requirements therefore, it must be sufficiently specific to enable the medical personnel to decide whether examination, rather than release, is appropriate and give the individual examined sufficient notice of those acts which will be considered at the commitment hearing so that he may prepare a "defense" or explanation if he wishes to contend commitment. *People v. Sansone,* 18 Ill.App.3d 315, 309 N.E.2d 733 (1974), *see also Robinson v. Hanrahan,* 409 U.S. 38, 39–40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972).

■ As we noted in our Memorandum Opinion of February 2, 1982, and as is still true, McKinney has failed to submit evidence which would raise an issue as to the procedural sufficiency of the two petitions. The petition of December 18, 1978, asserts that McKinney was "creating [a] dist[urbance]," "taking clothes off" and "running naked thru [sic] halls." The petition of November 13, 1979, states that McKinney was "walking in building with knifes [sic] and t[h]reatening people in building with same." McKinney has failed to submit evidence which would question that this information was sufficient to enable the physicians to decide whether McKinney should be detained and examined for admission or release.[13] He has further failed to raise an issue as to the sufficiency of this information as "notice" of the acts he would be evaluated on at a subsequent commitment hearing.

■ McKinney makes additional due process charges against the City of Chicago alone. There are two charges implied. The first is that it is a violation of McKinney's federal rights for the City to maintain a policy whereby police personnel are permitted to apprehend, transport and sign a petition for involuntary commitment without personally observing the behavior which indicates the need for hospitalization. This City of Chicago police policy has been found constitutional in *Saltzstein v. Phillips,* No. 81 C 567, slip op. at 8 (N.D.Ill. Nov. 9, 1981). We agree.

■ The court in *Saltzstein* noted that the finding necessary for an officer to make before acting under police General Order 78–19 is that the individual to be transported is in danger of harming himself or others. An identical finding is necessary for commitment under the Illinois Mental Health Code at section 3–600. The court reasoned that since the statute's provision had been found constitutional [*Mathew v. Nelson,* 461 F.Supp. 707 (N.D.Ill.1978)], and transportation under the General Order results in substantially less interference with the individual's liberty interest than does involuntary commitment, the Order is, *a fortiori,* constitutional. Id. We need not address whether this policy comports precisely with state law since the right to have a state law obeyed is not a federal right cognizable in this civil rights action. *Saunders v. Cahill,* 359 F.Supp. 79, 83 (N.D.Ill. 1973).

---

**13.** Since the petitions themselves cannot cause involuntary commitment and McKinney does not allege that the physicians' certificates were based solely on the information within the petitions and not on subsequent examinations, the only deprivation at issue is the temporary one of detention for the purpose of medical examinations.

■ The other due process charge made against the City is that a violation of McKinney's substantive due process rights occurred as a result of the fact that the City has arbitrarily decided to act under §§ 3–600 *et seq.* of the Illinois Mental Health Code, rather than §§ 3–700 *et seq.*, for all cases of involuntary commitment in which a police officer is involved. McKinney argues that the potential deprivation of liberty is less under § 3–700 *et seq.*, since an individual may remain at home until the examination for commitment. However, a close reading of §§ 3–700 *et seq.* shows that an individual found to be in immediate danger of harming himself or others will be detained under § 3–704 in the same way as he would be under §§ 3–600 *et seq.* Therefore, the use of either statute in the case of a person needing immediate admission would result in the same deprivation. The City's policy is to be used in cases where the officer has reason to believe emergency admission is justified. McKinney has made no showing that questions the reasonableness of the City's employment of that section of the statute which deals most specifically with emergency admissions.

For the reasons stated above, we find no genuine issues of material fact as to federal due process claims and grant summary judgment as a matter of law to the City and the defendant police officers on Count I.

## Count II—Search and Seizure

■ McKinney alleges that each officer involved in his detention violated his federal constitutional rights against unreasonable search and seizure. Since McKinney's complaint does not specify any particular objectionable search of his person or seizure of his property, the Court presumes his allegations in this count relate to the seizure of his person during arrest and transportation to the mental institutions on the two dates in question and any search incident to those occasions. To satisfy the requirements of the fourth amendment, reasonable cause to detain is necessary to effect a valid seizure. *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1978). As we have concluded under Count I, there is no genuine issue as to the valid probable cause to arrest, or apprehend, and detain McKinney on either of the dates in question.

■ A reasonable search may be conducted incident to a valid arrest. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Indeed, in limited circumstances, it is not always necessary for a formal arrest to actually occur before a valid search so long as probable cause for an arrest existed. *Cupp v. Murphy*, 412 U.S. 291, 296, 93 S.Ct. 2000, 2004, 36 L.Ed.2d 900 (1973).[14] McKinney has suggested no evidence which characterizes the seizures and searches occurring on November 13, 1978, and December 18, 1979, as anything but reasonable in view of the probable cause to arrest or apprehend him which preceded them.

Therefore, the Court finds no genuine issue of material fact as to Count II and grants summary judgment as a matter of law to the City of Chicago and all police defendants on this count.

## Count III—Equal Protection

The essence of McKinney's complaint in Count III is that defendants have denied him equal protection of the laws by arbitrarily submitting him to involuntary admission to a mental facility under §§ 3–600

---

14. The *Cupp* doctrine is limited to situations where the character of the search is highly unintrusive, the evidence sought will be lost absent the search and sufficient probable cause exists to support an arrest. It may be useful in situations dealing with those subject to emergency admission to a mental institution whose behavior may render them uncommunicative or even unconscious. In such a situation, probable cause to apprehend or seize an individual may exist for his own or others' protection, whereas the performance of a formal arrest ritual will be meaningless. An unintrusive search for an explanation of his present state or implements of harm to himself or others would appear reasonable if probable cause exists for the original apprehension. *See State v. Overing*, 268 N.W.2d 68, 73 (Minn.1978), *but see, Bouldin v. State*, 276 Md. 511, 350 A.2d 130, 132–133 (1976).

et seq. of the Illinois Mental Health Code rather than §§ 3–700 et seq. As has been noted, in certain circumstances, the §§ 3–700 et seq. procedure permits an individual to remain at liberty while awaiting a commitment examination, whereas §§ 3–600 et seq. procedure results in detention in a mental facility while awaiting the examination.

■ Defendants argue that this is a substantive due process claim rather than one of equal protection. We agree. Equal protection claims arise when a charge is made that similarly situated individuals are treated in different ways without a rational relationship to a legitimate state purpose. San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1972). When the individuals treated differently from the norm are denied a fundamental right or are members of a suspect class, a violation arises when the differing treatment is not necessary to achieve a compelling state interest. Id.

But in the instant case, McKinney does not charge that the City uses §§ 3–600 et seq. for some involuntary admissions and §§ 3–700 et seq. for others. He charges that the abuse occurs because the City uses §§ 3–600 et seq. for all involuntary admissions. Since this is not a case where individuals similarly situated have been treated differently, the allegation is more properly characterized as one of a violation of substantive due process. The abuse, if any, is that McKinney's interest in liberty has been arbitrarily denied by the City's decision to use §§ 3–600 et seq. rather than §§ 3–700 et seq. for all involuntary dismissals. This allegation has been previously dealt with under Count I where we found no genuine issue of material fact to exist. We therefore also grant summary judgment as a matter of law to the City and all police defendants on Count III.

### Counts IV–XI—State Law Claims

■ The remaining counts are allegations of violations of state constitutional law, state common law and state statutory law arising out of the same events as those on which the federal claims are based. Federal jurisdiction for these claims is based on pendent jurisdiction. Because we have granted summary judgment on all federal claims to the City and police defendants, we decline to exercise jurisdiction over McKinney's pendent claims against these defendants and thus dismiss Counts IV through XI without prejudice. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir.1982).

### Claims Against Velma George

■ Our decision to dismiss the state claims and grant summary judgment to all other defendants on the federal claims leaves three § 1983 federal constitution claims against defendant Velma George, a private citizen. Claims brought under § 1983 must allege that abuses were perpetrated under color of state law in order to state a cause of action. 42 U.S.C. § 1983 (1979). This does not mean that a private citizen can never be charged with a § 1983 violation. However, such an allegation must show that the private citizen acted in concert with or in the place of state actors. Sykes v. State of California, 497 F.2d 197, 200 (9th Cir.1974).

■ McKinney alleges that his rights were denied by George in concert with the City and the police defendants. Defendant Velma George has not joined in the other defendants' motion for summary judgment. Nevertheless, since we have found that there is no genuine issue as to the constitutional validity of the actions of the City and police defendants, George's actions alone cannot create the necessary concert of abuse. If McKinney has valid claims against George, they are in the nature of state law claims, not federal ones. Therefore, on our own motion, we also dismiss the remaining federal claims against defendant Velma George. Since the federal claims against George have been dismissed, we decline to retain jurisdiction over the state

claims against her, and dismiss,[15] without prejudice, those claims as well. *See Smith v. No. 2 Galesburg Crown Finance Corp.,* 615 F.2d 407, 422 (7th Cir.1980). It is so ordered.

**15.** As discussed above, these state claims have been dismissed against the other defendants.