Terry DeWayne ROBERTS, Plaintiff,

v.

Ron HOCHSTETLER; Tom McCutcheon; and City of Huntington, Defendants.

Civ. No. F 82–33.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Sept. 12, 1983.

Joe Keith Lewis, Fishburne & Lewis, Marion, Ind., for plaintiff.

Bruce B. Marr and Richard E. Steinbronn, Barnes & Thornburg, Elkhart, Ind., James E. Chovanec, Huntington, Ind., for defendants.

John C. Ruckelshaus, Indianapolis, Ind., for defendants Ron Hochstetler, Tom McCutcheon.

## ORDER

LEE, District Judge.

This matter is before the court on defendants' July 20, 1982 motion for summary judgment. Plaintiff responded on September 3, 1982. On September 3, 1982 plaintiff also filed a memorandum opposing defendant McCutcheon's affidavit filed in support of the motion for summary judgment. October 4, 1982, defendants filed a reply to plaintiff's response to defendants' summary judgment motion, a response to plaintiff's memorandum opposing defendant McCutcheon's affidavit, a memorandum in opposition to plaintiff's affidavit filed with plaintiff's response to defendant's summary judgment motion, and a memorandum in opposition to Exhibit 2 attached to plaintiff's response. This court granted plaintiff's motion for leave to reply to defendants' memorandums in opposition to plaintiff's affidavit and plaintiff's Exhibit 2. Plaintiff replied on October 22, 1982. For the following reasons, after resolving the disputes about the accompanying documents, defendants' motion for summary judgment will be granted.

### Discussion

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Peoples Outfitting Co. v. General Electric Credit Corp.*, 549 F.2d 42 (7th Cir.1977).

*See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See generally* C. Wright, *Law of Federal Courts* at 493–95 (3d ed. 1976); 6 *Moore's Federal Practice,* § 56.15 (1976).

Thus, the moving party must demonstrate the absence of a genuine issue of material fact. The court views all evidence submitted in favor of the non-moving party. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips,* 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Ass'n.,* 693 F.2d 636, 639 (7th Cir.1982). Further, if the court resolves all factual disputes in favor of the non-moving party and still finds summary judgment in favor of the moving party is correct as a matter of law, then the moving party is entitled to summary judgment in his favor. *Egger,* 710 F.2d at 297. *See also Bishop v. Wood,* 426 U.S. 341, 348, 348 n. 11, 96 S.Ct. 2074, 2079, 2079 n. 11, 48 L.Ed.2d 684 (1976).

■ While inferences from the evidence must be drawn in favor of the non-moving party, a caveat to this general rule is that the evidence presented, by affidavit or otherwise, must be admissible if it were to be introduced at a trial. Fed.R.Civ.P. 56; *Kashner v. Central States, Southeast and Southwest Areas Pension Fund,* No. 79–26, slip op. at 7 (N.D.Ind. August 6, 1982). Rule 56(e) states:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

These requirements are mandatory. *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.,* 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950); *First National Bank Co. v. Insurance Co. of North America,* 606 F.2d 760 (7th Cir.1979); *American Sec-urity Co. v. Hamilton Glass Co.,* 254 F.2d 889 (7th Cir.1958); *Midland Engineering Co. v. John A. Hall Construction Co.,* 398 F.Supp. 981 (N.D.Ind.1975).

■ If the affidavits contain inadmissible allegations, the court must disregard those allegations and consider only "the admissible portion in determining whether to grant or deny the [summary judgment] motion." *Lee v. Nat'l. Life Assurance Co.,* 632 F.2d 524, 529 (5th Cir.1980); *Kashner,* slip op. at 7. Finally, exhibits submitted which support or oppose the summary judgment motion may be considered if such exhibits would be admissible at a trial and have probative force. *First Nat'l. Bank,* 606 F.2d at 766. "A district court under [Rule 56] is not authorized to try issues of fact, but has the power to penetrate the pleadings and look at any evidential source to determine whether there is an issue of fact to be tried." *Id.* at 767.

With the review standards set forth, this court now turns to the resolution of the disputes regarding defendant McCutcheon's affidavit, plaintiff's affidavit, and plaintiff's Exhibit 2. Plaintiff raises the argument that defendant McCutcheon's affidavit, in part, is not based on personal knowledge, would not be admissible in evidence, and "[n]owhere does [defendant McCutcheon] clearly state that he has personal knowledge of the fact asserted ... as based upon his own personal observation." Plaintiff's basic assertion is that defendant McCutcheon's averments regarding the facts he received from a report from fellow officer Hochstetler are hearsay and inadmissible at trial.

The disputed statements are:

"That officer Hochstetler returned inside the Moon & Moon laundry and reported to affiant the appearance and strange behavior of Roberts and Turner outside the building.

"That affiant determined on the basis of ... the report of Officer Hochstetler regarding the appearances and suspect behavior of Terry DeWayne Roberts ... that there was probable cause for the arrest of Terry DeWayne Roberts[.]"

The statements McCutcheon made in his affidavit about the report he received from Officer Hochstetler would be admissible at trial, not for the truth of the statements, but as a partial basis for McCutcheon's good faith belief probable cause existed.[1]

The term "probable cause" is not susceptible to a precise definition. *See Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Probable cause exists where the "facts and circumstances [are] 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Generally speaking, its existence "depends upon the officer's own knowledge *and the knowledge received from others which is reasonably trustworthy*." *United States v. Gaston*, 620 F.2d 635, 638 (7th Cir.1980) (emphasis supplied). *See United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). *See also United States v. Jones*, 696 F.2d 479, 485, 485 n. 6 (7th Cir.1982).

Indiana follows the definition stated above of probable cause. *Fyock v. State*, 436 N.E.2d 1089, 1093 (Ind.1982); *Battle v. State*, 415 N.E.2d 39 (Ind.1981); *Strosnider v. State*, 422 N.E.2d 1325 (Ind.App. 1981). Further, Indiana also follows the rule that probable cause is "determined upon the basis of the collective information known to the law enforcement organization." *Brown v. State*, 442 N.E.2d 1109 (Ind.1982). *See also Suggs v. State*, 428 N.E.2d 226 (Ind.1981); *Owens v. State*, 427 N.E.2d 880 (Ind.1981); *Benton v. State*, 273 Ind. 34, 401 N.E.2d 697 (1980). Therefore, McCutcheon was entitled to rely on fellow Officer Hochstetler's report about the plaintiff in reaching his conclusion probable cause for plaintiff's arrest existed, such reliance was properly averred in his affidavit, and the statements in McCutcheon's affidavit are admissible at trial. This court will consider all of McCutcheon's affidavit in deciding defendants' summary judgment motion.

Defendants argue that plaintiff's affidavit contains conclusory statements inadmissable at trial and thus, improper for consideration by this court on summary judgment. Defendants object to plaintiff's statements:

"I know I was not walking away from [Officer Hochstetler] very fast because I was waiting for Art Turner to catch up with me."

. . . . .

"The double doors where Art Turner was supposed to have been, according to the statements of Ron Hochstetler, would not have been visible to the man I passed next to the laundry."

. . . .

"Art Turner came up from behind me, so he would have traveled the same path I did."

"I know Art Turner was not by the double doors as Ron Hochstetler said he was, because he could not have covered the distance between the double doors and the corner of the building in the same amount of time it took me to walk twenty (20) to twenty-five (25) feet away from the man I saw."

Conclusory allegations are not sufficient to raise material issues of fact. *Hall v. Local No. 3*, 696 F.2d 494, 500 (7th Cir.1982); *Ashwell & Co., Inc. v. Transamerica Insurance Co.*, 407 F.2d 762, 766 (7th Cir.1969). Defendants argue plaintiff's statements quoted above "are not

---

**1.** It is true that information not observed personally by Officer McCutcheon would be hearsay and inadmissable at plaintiff's state criminal trial, *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), to prove the guilt of the plaintiff, *McKinney v. George*, 556 F.Supp. 645 (N.D.Ill.1983). However, the question of the actual guilt or innocence of the plaintiff is not before this court; the question of the existence of good faith belief in or actual probable cause is. The facts which form the basis of Officer McCutcheon's belief probable cause existed are admissible for that purpose.

based on facts or personal knowledge, but are statements arising from speculations." Plaintiff replies that the disputed statements are the opinions of a lay witness relating to time, speed and distance.

Going through each of the statements, the court will examine them in light of the summary judgment standards and Fed.R. Evid. 701 which states:

If a witness is not testifying as an expert, his testimony in the form of opinion or inferences is limited to those opinions or inferences which are a) *rationally based on the perception of the witness* and b) helpful to a clear understanding of his testimony or the determination of a fact and issue.

Fed.R.Evid. 701 (emphasis supplied).

 Plaintiff's first statement is based on his personal knowledge, is relevant to explain his state of mind, and will be considered by the court.[2] The statement about the double doors not being visible to Officer Hochstetler when plaintiff passed by him will be considered because the court finds it to be within the scope of Rule 56(e). Officer Hochstetler's affidavit states he saw Arthur Turner at the doors after plaintiff had passed by him and does not say where he was standing when he noticed someone at the doors of the laundry. Even if the court considers plaintiff's second statement, it does not rebut Hochstetler's statement.

 The court will consider the statement that Art Turner came up behind plaintiff. Such a statement is rationally based on plaintiff's personal knowledge. Plaintiff's opinion about Turner's ability to cover the distance involved to catch up to plaintiff in the amount of time plaintiff and Turner were apart will be considered as within the scope of a 56(e) affidavit and Fed.R.Evid. 701. The court will also consider plaintiff's belief he had traveled twenty to twenty-five feet away from Hochstetler when Turner caught up to him. Plaintiff's statements are largely relevant to the

matter at hand and such statements would likely be admissible at trial.

 Defendants also object to the attached exhibit 2 in plaintiff's response to defendants' summary judgment motion. Defendants argue the exhibit which is a copy of the Court of Appeals of Indiana decision entitled *Turner v. State* is inadmissable at trial and irrelevant because Mr. Turner is not a party to this suit and the opinion only addresses the issue of the sufficiency of the evidence to sustain Mr. Turner's conviction for the same crime with which the plaintiff was charged. The court does not find the opinion would be inadmissible at trial, based on what facts the trial court now has before it. It cannot be said the opinion would not be relevant and would not have probative force, particularly as it deals with a person intimately connected to this matter and deals with the same set of facts as this action. *See First Nat'l. Bank,* 606 F.2d at 766, 767. The court does not find the opinion directly relevant or helpful to resolution of the matter at hand, but exhibit 2 will not be excluded from the court's consideration of this summary judgment motion.

Having resolved the documentary disputes, the court will now turn to a resolution of the matter before it: defendants' motion for summary judgment.

The facts listed below are not disputed by the parties. This action arises out of events which occurred February 7–8, 1980 around midnight. Defendants Ron Hochstetler and Tom McCutcheon were police officers employed by defendant City of Huntington. Defendants Hochstetler and McCutcheon were on a stakeout assignment at the Moon & Moon Laundry, arriving at approximately 11:45 p.m. on the night of February 7–8, 1980. The officers found evidence of a possible burglary or burglary attempt and heard noises inside the Moon & Moon Laundry. Plaintiff was in the area of the laundry shortly after

**2.** Defendants do not contest the statement also made in plaintiff's affidavit: "I did not run away from the man I saw."

midnight. Officer Hochstetler saw plaintiff and Arthur Turner outside the laundry at the time the noises were heard and the evidence discovered. Officer Hochstetler exchanged words with the plaintiff at the time Hochstetler saw plaintiff outside the laundry. Plaintiff was arrested in the early morning of February 8, 1980. A probable cause hearing was held in the Huntington County Court on February 8, 1980; defendant Hochstetler was the only witness testifying. The Huntington County Court judge found probable cause. Plaintiff was eventually tried and convicted of the offense of burglary in the Huntington Circuit Court. The Court of Appeals of Indiana reversed plaintiff's conviction for lack of sufficient evidence to support plaintiff's conviction. *Roberts v. State*, 415 N.E.2d 167 (Ind.App.1980).

Plaintiff brought this action February 2, 1982 against the defendants Hochstetler and McCutcheon, claiming a violation of 42 U.S.C. § 1983. Plaintiff also brought suit against the named defendants and the City of Huntington for pendant state claims of false arrest and imprisonment. On November 29, 1982 this court granted plaintiff's motion to amend his complaint. The amendment added a section 1983 claim against the City of Huntington, based on the City's alleged negligent acts.

Defendants raise three arguments in favor of their motion for summary judgment. First, they argue this suit is foreclosed by the doctrine of collateral estoppel because the issue of probable cause has been litigated and disposed of in the state court proceedings, notwithstanding the fact the plaintiff here was subsequently acquitted due to lack of sufficient evidence to support his conviction. Second, they argue the defendant police officers acted with the good faith belief probable cause existed when they arrested plaintiff. Third, all the facts and circumstances establish probable cause did, in fact, exist. Through the responses and replies, the further issue arose of whether the pendant state claims of false arrest and imprisonment should remain in federal court if the section 1983 claims were dismissed through summary judgment.

■ Defendants' first argument is grounded upon *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). *Allen* held that the doctrines of *res judicata* and collateral estoppel apply to section 1983 suits. Collateral estoppel mandates that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen*, 449 U.S. at 94, 101 S.Ct. at 414; *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

■ Defendants argue that the issue of probable cause for plaintiff's arrest has already been decided by the Huntington County Court and the Huntington Circuit Court when they found, respectively, that probable cause existed to bind plaintiff over for trial and that plaintiff was found guilty of the charged offense. The court finds that the issue presented here of probable cause was never fully, fairly or finally adjudicated nor was it expressly presented in the state court proceedings except at the actual probable cause hearing. Once the state proceedings went to trial and appellate levels, the issue of probable cause to make the arrest was simply not litigated.

■ There has been no showing by the defendants that the issue of probable cause was ever litigated or decided in state proceedings where plaintiff would have had the chance to fully and fairly dispute and litigate the issue of probable cause. "[O]ne general limitation ... recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen*, 449 U.S. at 95, 101 S.Ct. at 415. *See also Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–20, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971).

The record of the probable cause hearing reflects the hearing was nonadversarial

and plaintiff was not present nor was counsel for plaintiff present. Probable cause hearings have the limited function of determining whether there is probable cause for further detention of the arrested person in question. *Gerstein,* 420 U.S. at 120, 95 S.Ct. at 866. They are nonadversarial and are not considered a critical stage in the prosecution of criminal charges. *Id.* at 122, 95 S.Ct. at 867. Indiana conducts nonadversarial probable cause hearings; such hearings do not function as arraignments or initial hearings. *See Blake v. Katter,* 693 F.2d 677, 681 (7th Cir.1982) (examining an arrest made under Indiana law and procedure); I.C. 35–1–6–2(c) (Burns Code Ed., Repl.1979) (re-codified at I.C. 35–33–5–2(c) (Burns Code Ed., Supp.1982). *See also* I.C. 35–33–7–2 (Burns Code Ed., Supp.1982) (ex parte determination of probable cause) (effective September 1, 1982).

It is axiomatic plaintiff cannot have had a full and fair opportunity to litigate the issue of probable cause. The determination was made in a nonadversarial hearing without plaintiff or his counsel present. To hold that such a hearing constituted a full and fair opportunity to litigate the issue flies in the face of the definition of litigation and of adversary proceeding. Such a holding would also fly in the face of *Gerstein,* which holds a probable cause determination hearing is not a critical stage because such a hearing does not impair later defense on the merits by an accused if the accused or his counsel is not present. *Gerstein,* 420 U.S. at 122, 95 S.Ct. at 867. *See also Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Plaintiff is not collaterally estopped from bringing this section 1983 action.

Defendants' second argument is that the police officers acted with the good faith belief there was probable cause to arrest plaintiff. Defendant Hochstetler states in his affidavit that he and Officer McCutcheon were staking out the Moon & Moon Laundry which had been the victim of several burglaries. Upon their arrival at the laundry at approximately 11:45 p.m. on the night of February 7–8, 1980, Hochstetler heard noises inside the building which indicated a burglary was in "process." While Officer McCutcheon stayed in the building to check out the noises, Hochstetler "left the building to ascertain whether any person or persons were in the vicinity of the building and to examine the coin-operated section of the building." Hochstetler saw plaintiff "walking at a quick pace outside the building" as he exited the building. Hochstetler states that upon seeing Hochstetler, plaintiff "appeared scared", "began walking at a quicker pace", and "that upon passing [Hochstetler, plaintiff] quickly ran around the corner" away from Hochstetler. Hochstetler then noticed Art Turner standing "with his hand on the door knob" of the laundry; Turner "looked frightened and took off running, following in the footsteps of [plaintiff]." Hochstetler based his belief there was probable cause to arrest plaintiff on the noises he heard inside the laundry, the appearance and behavior of the plaintiff and Art Turner at the scene and the evidence found at the laundry, including the fact the door where Hochstetler had seen Turner was ajar, which indicated a burglary of the laundry had been in progress when the officers arrived. A window was found unlocked, two pry bars were found inside the laundry, and the door, equipped with a dead bolt lock, had been unlocked from the inside.

McCutcheon's affidavit is virtually the same as defendant Hochstetler's except that he states he relied on Hochstetler's report as to the appearance and behavior of plaintiff and Art Turner outside the laundry. The plaintiff filed a counter-affidavit in which he states that he was outside the laundry "shortly after midnight" on the night in question, accompanied by Art Turner, that they "stopped by the building that houses the Moon & Moon Laundry" to urinate, that he "left before" Art Turner, that he was by the side of the building near the laundry when he saw a man later identified to him by Mr. Turner as defendant Hochstetler, that he spoke to him, and that he was walking at a pace normal for a February night and no faster. He states

Turner caught up to him after he had seen and conversed with Hochstetler. He states he did not run away from Hochstetler.

This court will construe all factual disputes in the plaintiff's favor. Thus, the facts before this court which it will consider are the following. Defendants Hochstetler and McCutcheon were police officers who arrived at the Moon & Moon Laundry at approximately 11:45 p.m.–12:00 a.m. on the night of February 7–8, 1980. There were noises inside the building when they arrived and signs a burglary or burglary attempt was in progress. Officer McCutcheon remained inside the laundry to investigate the noises the officers heard and Officer Hochstetler went outside to investigate. While he was outside the building he saw plaintiff, who walked past him and exchanged a few words and then he saw Art Turner with his hand on the door knob of the laundry, who walked quickly past him. Plaintiff and Art Turner, although separated for a time, were accompanying each other that night. A further investigation of the building gave evidence that the building had been entered through a window, that two pry bars were inside the laundry and that the door where Hochstetler had seen Turner was opened from the inside and ajar.

 Qualified good faith immunity is available to police officers acting in their official capacities. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). *See also Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Lenard v. Argento,* 699 F.2d 874 (7th Cir.1983); *Brubaker v. King,* 505 F.2d 534 (7th Cir.1974). The test for determining good faith of a person acting in his or her official capacity is an objective one. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

 Public officials acting in their official capacities "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 2738. Plaintiff claims violation of the fourth and fourteenth amendments to the Constitution. While *Harlow* does not address specifically whether this objective rule applies to state officials being sued under section 1983, it sets out a very broad hint that it would not make a distinction between suits against state officials and suits against federal officials in applying the objective test for determining good faith. *Id.* at 2738 n. 30. *See also Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

The Seventh Circuit has taken the hint and applies the *Harlow* test to suits involving state officials being sued for damages under section 1983. *Johnson v. Brelje,* 701 F.2d 1201 (7th Cir.1983); *Crowder v. Lash,* 687 F.2d 996 (7th Cir.1982). *See also Egger, supra; Wolfel v. Sanborn,* 691 F.2d 270 (6th Cir.1982) (Sixth Circuit adopting *Harlow* test for state officials). *See generally Owen v. Lash,* 682 F.2d 648 (7th Cir. 1982) (pre-*Harlow* test immunity discussion).

 This court, applying the *Harlow* test to the facts set out above, drawing all inferences in favor of plaintiff, finds that the defendant police officers proceeded with good faith in their arrest of the plaintiff and are entitled to immunity. The officers had before them a set of facts and circumstances which would lead a reasonable person to believe a crime had been or was being committed. The two officers arrived at the laundry around midnight on the night of February 7–8, 1980. Upon their arrival they heard suspicious noises coming from inside the building. Officer McCutcheon remained inside the building to investigate the noises and Officer Hochstetler went outside to examine the area around the laundry.

Officer Hochstetler saw plaintiff upon his exiting the building. Plaintiff appeared scared and walked past him and around the corner of the building. Immediately thereafter, Hochstetler noticed Art Turner standing at the door of the laundry with his hand on the door knob. Turner looked frightened and ran in the direction plaintiff

had taken. A search of the laundry revealed evidence that a breaking and entering had occurred through a window, that two pry bars were found inside the laundry, and that the door where Turner had been seen by Hochstetler was ajar and had been unlocked from the inside.

■■■ There is more than enough here to show an objective good faith belief that probable cause existed. Again, the proof for probable cause does not approach the level of proof needed for guilt beyond a reasonable doubt or even by a preponderance of the evidence. *Draper*, 358 U.S. at 311–12, 79 S.Ct. at 332; *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310–11, 93 L.Ed.2d 1879 (1949). *See also McKinney v. George*, 556 F.Supp. 645 (N.D.Ill.1983). The standard is whether there could be a reasonable belief a crime was being or had been committed. *Gerstein*, 420 U.S. at 111–12, 95 S.Ct. at 862; *Beck*, 379 U.S. at 91, 85 S.Ct. at 225. For the officers in this situation to have acted any differently than they did would have left them open to a charge on dereliction of their duty. *See Pierson*, 386 U.S. at 555, 87 S.Ct. at 1218.

■■■ The fact the appellate court found that the evidence presented at plaintiff's trial created "only a suspicion of guilt" does not dissuade this court from its conclusion the officers had a good faith belief probable cause existed. A reasonable suspicion of guilt is sufficient to support a good faith belief in the existence of probable cause. *Dumbra v. United States*, 268 U.S. 435, 441, 45 S.Ct. 546, 548–49, 69 L.Ed. 1032 (1925). *See Strosnider v. State*, 422 N.E.2d at 1328. *See also McKinney*, 556 F.Supp. at 648.

Even the fact the appellate court labeled the trial evidence as showing only "a mere suspicion" does not dissuade this court from the above-mentioned conclusion. The

appellate court was not presented with nor did it reach the issue of what quantum of evidence existed to support the arresting officers' belief probable cause existed. Plaintiff cannot argue there has been no prior full and fair litigation of the issue of probable cause and then argue the appellate court decided the issue by its choice of words in referring to the criminal trial and the evidence there presented. The officers' good faith belief in probable cause is not obviated by the appellate court decision. Defendants are entitled to invoke immunity from this suit for civil damages under section 1983 for alleged violations of the fourth and fourteenth amendments.[3]

■■■ Turning to defendants' third issue, this court finds actual probable cause existed. A reasonable person would, under the facts and circumstances of this case, believe "the suspect had committed or was committing an offense." *Beck*, 379 U.S. at 91, 85 S.Ct. at 225. The actual existence of probable cause is an absolute defense and bar to section 1983 actions. *Terket v. Lund*, 623 F.2d 29, 31 (7th Cir.1980). *Accord Howell v. Tanner*, 650 F.2d 610, 614 (5th Cir.1981), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178; *Hunter v. Clardy*, 558 F.2d 290 (5th Cir.1977); *Beauregard v. Wingard*, 362 F.2d 901 (9th Cir.1966). *See Pierson*, 386 U.S. at 555, 87 S.Ct. at 1218 ("Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved."). *Cf. Baker v. McCollan*, 443 U.S. at 143–45, 99 S.Ct. at 2694 (arrest of wrong person pursuant to valid warrant not a cognizable section 1983 claim). "It is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained." *Mason v. Continental Illinois National Bank*, 704 F.2d 361, 367 (7th Cir.1983).

---

**3.** "Respondent's innocence of the charge contained in the warrant, while relevant to a tort claim for false imprisonment ... is largely irrelevant to his claim of deprivation of liberty without due process of law. The Constitution does not guarantee only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted —indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).

Turning to the last issue raised, this court finds that it will dismiss the pendent state claims because all federal claims will be dismissed prior to trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Graf v. Elgin, Joliet & Eastern Ry.*, 697 F.2d 771, 775 (7th Cir.1983); *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir.1982). Plaintiff's state claims will be dismissed without prejudice.

### Conclusion

It is, therefore, CONSIDERED, ORDERED and ADJUDGED that defendants' motion for summary judgment be, and hereby is, GRANTED with prejudice. Plaintiff's pendent state claims are dismissed without prejudice.